IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


UNITED STATES OF AMERICA,

        Plaintiff,

v.                                        Criminal Action: 5:06-cr-51

EUGENE J. TALIK, JR.,

        Defendant.


**REPORT AND RECOMMENDATION THAT MOTIONS TO DECLARE FEDERAL DEATH PENALTY ACT UNCONSTITUTIONAL, TO DISMISS THE SPECIAL FINDINGS FROM THE INDICTMENT, TO STRIKE THE NOTICE OF INTENT TO SEEK THE DEATH PENALTY, AND TO STRIKE THE AGGRAVATING FACTORS BE DENIED BUT THAT THE GOVERNMENT BE ORDERED TO SUBMIT A BILL OF PARTICULARS AS TO THE AGGRAVATING FACTORS IT INTENDS TO PROVE**

## I. Introduction

A.    Background

On December 5, 2006, the grand jury returned an indictment charging Defendant with the following offenses: Count One - Conspiracy to travel in interstate commerce to commit a crime of violence against an intimate partner and dating partner, in violation of 18 U.S.C. § 371; Count Two - Interstate domestic violence, in violation of 18 U.S.C. §§ 2, 22261(a)(1), 2261(b)(1), and Pinkerton v. United States, 328 U.S. 640 (1946); Count Three - Use of interstate commerce facilities in the commission of murder-for-hire, in violation of 18 U.S.C. §§ 2, 1958 and Pinkerton v. United

1

States, 328 U.S. 640 (1946).[1]

On December 29, 2006, Defendant appeared and pleaded Not Guilty to the charged offenses. On that same day, Plaintiff, ["the Government"], filed a Notice of Intent to Seek the Death Penalty, ["Notice"], as to Defendant pursuant to 18 U.S.C. § 3593(a).[2]

In its Notice, the Government set forth the following aggravating factors as justifying a sentence of death if Defendant is convicted of Count Three:

- The defendant was more than 18 years of age at the time of the offense.

- Statutory Factor Enumerated under 18 U.S.C. § 3591(a)(2)(c): the Defendant intentionally participated in an act, contemplating that the life of a person would be taken, other than one of the participants in the offense, and the victim died as a result of the act.

- Statutory Factors Enumerated Under 18 U.S.C. § 3592(c): 1) The defendant committed the offense after substantial planning and premeditation to cause the death of a person; and, 2) the defendant procured the commission of the offense by payment and promise of payments, of anything of pecuniary value.

- Other, Non-Statutory, Aggravating Factors Identified under 18 U.S.C. § 3593(a)(2): 1) The defendant presents a threat of future dangerousness; 2) the defendant cremated the victim; 3) the defendant committed a sexual act against the victim shortly before he killed her; and, 4) the effect of the offense on the victim and the victim's family, including leaving the victim's two young sons motherless.

---

[1] Docket No. 23.

[2] Docket No. 33.

On July 16, 2007 Defendant filed a motion challenging the constitutionality of both the Federal Death Penalty Act and the Government's Notice.[3] The Government filed its opposition to the Defendant's motion on August 1, 2007.[4] At the status conference held August 13, 2007, Defendant, after first being sworn, waived his right to an evidentiary hearing on these motions.

B.    The Pleadings

      1.    Defendant's Motion and Memorandum of Points and Authority to Declare the Federal Death Penalty Act Unconstitutional, to Dismiss the "Special Findings" From the Indictment, to Strike the Notice of Intent to Seek the Death Penalty, to Strike the Aggravating Factors and to Request an Evidentiary Hearing on the Sufficiency of the Statutory and Non-Statutory Aggravating Factors Alleged by the Government.

      2.    United States' Response to Defendant's 96 Page Motion Regarding Aspects of the Federal Death Penalty Act.

C.    Recommendation

For reasons appearing to the Court, hereinafter enumerated, I recommend that:

      1.    Defendant's Motion to Declare the Federal Death Penalty Act Unconstitutional be **DENIED** because the specific provisions Defendant contends are unconstitutional have been upheld as constitutional.

      2.    Defendant's Motion to Strike  the "Special Findings" from the Indictment be **DENIED** because the "Special Findings" comply with the mandates of the Constitution and the Federal Death Penalty Act.

      3.    Defendant's Motion to Dismiss the Notice of Intent to Seek the Death Penalty be **DENIED** because the Notice complies with the mandates of the Constitutiol and the Federal Death

---

[3] Docket No. 80.

[4] Docket No. 88.

Penalty Act.

4.      The Government provide a sufficiently detailed Bill of Particulars regarding the facts underlying all the aggravating factors - statutory and nonstatutory - listed in the Notice of Intent to Seek the Death Penalty to apprise Defendant of those aggravating factors sufficiently to avoid surprise at trial.

5.      Defendant's Motion for an Evidentiary Hearing be denied as moot.

## II.  Overview of Procedure Pursuant to the Federal Death Penalty Act of 1994

Defendant is charged in Count Three of the indictment with "Use of interstate commerce facilities in the commission of murder-for-hire, in violation of 18 U.S.C. §§ 2, 1958 and <u>Pinkerton v. United States</u>, 328 U.S. 640 (1946)."  Pursuant to the Federal Death Penalty Act of 1994, ["FDPA"], an individual (eighteen years of age or older) found guilty of using interstate commerce facilities in the commission of a murder-for hire may be sentenced to death.  18 U.S.C. § 1958, 3591 et seq.  If the government intends to seek the death penalty in such a case, the government must, prior to trial, file and serve on the defendant  notice of such intent.  <u>Id.</u> at § 3593(a).  The Notice must include the government's belief that the circumstances of the offense justify a sentence of death and must set forth at least one of the statutory aggravating factors specified in section 3592(c) and any additional statutory and nonstatutory aggravating factors the prosecution intends to rely on in justifying a sentence of death.  <u>Id.</u> at § 3593(a)(2)

The penalty phase of a capital case consists of two distinct phases -  the "eligibility" phase and the sentencing phase.  During the "eligibility" phase, the jury must determine whether the defendant is eligible for the death penalty.  The defendant is eligible for the death penalty only if the jury *unanimously* finds *beyond a reasonable doubt* 1) the defendant committed the crime with one

of the mental states set forth in section 3591(a)(2) and 2) at least one of the aggravating factors set forth in section 3592(c) exists. Id. at §§ 3591(a), 3593(e). If there is *not* unanimous agreement to both of the above, the jury must recommend a sentence other than death. Id. at § 3593(d). If there *is* unanimous agreement to both of the above, the defendant is deemed "eligible" for the death penalty and the jury may proceed into the sentencing phase. Id.

During the sentencing phase, the jury is instructed to consider "whether all the aggravating factor or factors found to exist sufficiently outweigh all the mitigating factor or factors found to exist to justify a sentence of death." 18 U.S.C. § 3593(e). The jury may consider only those statutory and non-statutory aggravating factors it unanimously agrees exist beyond a reasonable doubt. Id. at §§ 3593(c), (d). As for mitigating factors, a single juror may consider any mitigating factor s/he finds to be proven by a preponderance of the evidence. Such a finding need not be unanimous. Id. At the conclusion of its consideration of the aggravating and mitigating factors, the jury must unanimously recommend a sentence of death, life imprisonment without the possibility of release, or some other lesser sentence. Id. at § 3593(e). A recommendation for death or life imprisonment without the possibility of release is binding on the judge. Id. at § 3594.

### III. The Parties' Motions

A.    Contentions of the Parties

Defendant alleges the FDPA violates his Fifth, Sixth and Eighth Amendment rights as well as general protections of the Constitution. He also alleges the Government's Notice violates the Constitution and the FDPA. For these reasons, Defendant asks this Court to declare the FDPA unconstitutional, to strike the "Special Findings" from the Indictment and to dismiss the Notice. In the event this Court does not dismiss the Notice, Defendant asks this Court to order the Government

to submit a Bill of Particulars providing sufficient detail of the aggravating factors alleged in the Notice.

The Government argues the FDPA is constitutional and the Government's Indictment and Notice comply with the Constitution and the FDPA such that neither should be stricken nor dismissed in part or in whole. The Government states it is willing, nevertheless, to submit a Bill of Particulars providing additional detail of the aggravating factors alleged in the Notice.

B.    <u>Defendant's Motion to Declare the Federal Death Penalty Act Unconstitutional</u>.

     1.    <u>Whether the FDPA Violates the Eighth Amendment By Failing to Narrow the Class of Persons Eligible for the Death Penalty.</u>

Pursuant to the Eighth Amendment to the Constitution of the United States, cruel and unusual punishments may not be inflicted. U.S. Const. amend. VIII. As it pertains to a death penalty statute, the Eighth Amendment requires a death penalty statute to "genuinely narrow the class of persons eligible for the death penalty and . . . reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder." <u>Zant v. Stephens</u>, 462 U.S. 862, 876 (1983); <u>see</u>, <u>also</u>, <u>Godfrey v. Georgia</u>, 446 U.S. 420, 428-29 (1980); <u>Lewis v. Jeffers</u>, 497 U.S. 764, 774 (1990). "The legislature may itself narrow the definition of capital offenses, . . . , or the legislature may more broadly define capital offenses and provide for narrowing by jury findings of aggravating circumstances at the penalty phase." <u>Lowenfield v. Phelps</u>, 484 U.S. 231, 246 (1988). The FDPA, applicable to any federal "offense for which a sentence of death is provided," purports to narrow the broad class of persons eligible for the death penalty by requiring - above a conviction for a qualifying offense - that a defendant acted with one of the mental states listed in section 3591(a)(2)(A)-(D) and the existence of at least one statutory aggravating circumstance listed in

section 3592(c).  Defendant alleges both the mental intent factors and aggravating factors are too vague and broad to sufficiently narrow the class of persons eligible for the death penalty. Specifically, he claims the mental intents enumerated in section 3591(a)(2)(A)-(D) fail to draw any rationale distinction between the broad class of individuals convicted of "intentional" killings and those who are later determined to be eligible for the death penalty.  Similarly, Defendant alleges the aggravating factors enumerated in section 3592(c) fail to narrow the class of persons eligible for the death penalty because "the list of factors is so broad as to apply to essentially any of the vast range of federal offenses where death is provided for by statute."

Regarding Defendant's challenge to the FDPA's mental intent factors listed in section 3591(a)(2)(A)-(D), the Supreme Court has held that the Eighth Amendment prohibits punishing in the same manner one who "[themselves] kill, attempt to kill, or intend that a killing take place or that lethal force will be employed" as one who *unintentionally* causes harm.  Enmund  v. Florida, 458 U.S. 782, 797 (1982).  Accordingly, the Supreme Court requires that a capital murder defendant have some level of intent before he may be sentenced to death.  Pursuant to such requirements, the FDPA states a capital murder defendant may not be sentenced to death unless the government proves beyond a reasonable doubt that the defendant acted with one of the mental states listed in section 3591(a)(2)(A)-(D).  See 18 U.S.C. § 3591(a)(2).  While Defendant asserts the FDPA's mental intent factors fail to narrow the class of persons eligible for the death penalty, multiple Courts have upheld the constitutionality of mental intent factors employed in a death penalty statute.  See United States v. Taylor, 2006 U.S. Dist. LEXIS 81202, at *20 (E.D.Tenn. Nov. 6, 2006); United States v. Tipton, 90 F.3d 861, 897-99 (4th Cir. 1996); United States v. Nguyen, 928 F. Supp. 1525, 1539 (D. Kan. 1996); United States v. Cooper, 91 F. Supp. 2d  90, 97 (D.D.C. 2000).

Regarding Defendant's challenge to the FDPA's statutory aggravating factors, the Supreme Court has upheld the constitutionality of an aggravating factor so long as it meets two requirements. First, it must not be over-broad. See Tuilaepa v. Cal., 512 U.S. 967, 972 (1994). In other words, "if the sentencer could conclude that an aggravating circumstance applies to every defendant eligible for the death penalty, the circumstance is constitutionally infirm." Arave v. Creech, 507 U.S. 463, 474 (1993). Second, it must not be unconstitutionally vague. Tuilaepa, 512 U.S. at 972. An aggravating factor is unconstitutionally vague "if it fails to furnish principled guidance for the choice between death and a lesser penalty." Richmond v. Lewis, 506 U.S. 40, 46 (1992). To avoid such a characterization, an aggravating factor must "have some common sense core of meaning . . . that criminal juries should be capable of understanding." Jurek v. Texas, 428 U.S. 262, 279 (1976) (White, J., concurring in judgement). In light of these guidelines, the FDPA's statutory aggravating factors, and in particular the two aggravating factors alleged by the Government in their Notice, have been upheld as constitutional. See United States v. O'Driscoll, 203 F. Supp. 2d 334, 344 (M.D.Pa. 2002); United States v. Tipton, 90 F.3d 861, 896 (4th Cir. 1996); United States v. Minerd, 176 F. Supp. 2d 424, 448 (W.D.Pa. 2001); United States v. Davis, 904 F. Supp. 558 (E.D.La. 1995). Regarding the factor alleging "substantial planning and premeditation," the Court in Tipton explained that while the word "substantial" may have different meanings depending on its surrounding context, the context of the language within the text of the FDPA as well as the judge's instructions to the jury sufficiently conveys the common-sense meaning of the word "substantial" to the jury, thereby sufficiently "channel[ling] the jury's discretion in assessing eligibility for the death penalty."[5]

_____

[5] In Tipton, the judge instructed the jury, "substantial planning means planning that is considerable, or ample for the commission of a crime at issue in this case: murder." Tipton, 90 F.3d at 896.

8

Tipton, 90 F.3d at 896.  Regarding the factor alleging Defendant "procured the commission of the offense by payment and promise of payments, of anything of pecuniary value," the Court in Davis upheld its constitutionality, explaining there was "nothing vague or overly broad about a murder-for-hire which is in essence what § 3592(c)(8) describes."  Davis, 904 F. Supp. at 558.

2. <u>Whether the FDPA Violates the Sixth Amendment Because it Fails to Require the Jury to Find Beyond a Reasonable Doubt that the Aggravating Factors Outweigh the Mitigating Factors.</u>

Defendant alleges the FDPA violates the Sixth Amendment by failing to require the jury to find *beyond a reasonable doubt* that the aggravating factors outweigh the mitigating factors. Pursuant to the FDPA, a jury in the penalty phase of a capital trial must make two factual findings beyond a reasonable doubt before it may consider imposing the death penalty: first, that defendant acted with a specific mens rea and second, that at least one statutory aggravating factor listed in 3592(c) exists.  <u>See</u> 18 U.S.C. §§ 3591(a), 3593(d), (e).  If the jury fails to make these two findings beyond a reasonable doubt, the defendant is not eligible for the death penalty and may only receive a sentence less than death.  <u>See</u> <u>Id.</u> at 3593(d).  If, however, the jury does find for the two factors beyond a reasonable doubt, the defendant is "death eligible" and the jury is instructed to consider whether the aggravating factors sufficiently outweigh the mitigating factors to justify a sentence of death.  <u>Id.</u> at 3595(e).  At the conclusion of their consideration, "the jury by unanimous vote, . . . shall recommend whether the defendant shall be sentenced to death, to life imprisonment without possibility of release or some other lesser sentenced."  <u>Id.</u>  Relying on the Supreme Court precedent set forth in the <u>Jones</u>-<u>Apprendi</u>-<u>Ring</u> trilogy, Defendant argues the jury should not be permitted to recommend a sentence of death unless they unanimously agree, *beyond a reasonable doubt*,  that the aggravating factors sufficiently outweigh mitigating factors.

9

In Jones v. United States, 526 U.S. 227, 229-31 (1999), the Supreme Court considered the issue of whether a fact that increases a sentence beyond the statutory maximum (as dictated by the facts in the jury's verdict) must be charged in the indictment and proven beyond a reasonable doubt or, alternatively, merely presented to the judge at sentencing for his/her consideration. In Jones, the defendant was indicted for and found guilty of car jacking. Id. At the sentencing hearing, the judge heard evidence that the victim had sustained serious bodily injury and sentenced the defendant to 25 years, despite the fact that the applicable sentencing statute provided 15 years for a car jacking conviction and 25 years if the victim suffered serious bodily injury. Id. at 231. The Supreme Court held that pursuant to the Sixth Amendment and the Due Process Clause of the Fifth Amendment, any fact that increases the maximum penalty - as opposed to a fact that merely encourages a higher sentence within a pre-set range - is an element of the enhanced offense and must be charged in the indictment, proven beyond a reasonable doubt and submitted to the jury for its verdict. Id. at 252. Because the fact that the victim had sustained serious bodily injury was a fact that increased the defendant's maximum penalty - from 15 years to 25 years - and was therefore an element of an enhanced offense, the fact had to have been submitted to the jury. Because it was not, the Appeals Court's decision was reversed and the case was remanded for further proceedings. Id. at 252.

In 2000, the Supreme Court affirmed its decision in Jones, holding in Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), that "other than a fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to the jury, and proved beyond a reasonable doubt. Finally, in 2002, in Ring v. Arizona, 536 U.S. 584, 589 (2002), the Court applied Jones and Apprendi to a state death penalty statute and held "capital defendants . . . are entitled to a jury determination of any fact on which the legislature conditions an increase in

their maximum punishment." Furthermore, that fact must be found by the jury beyond a reasonable doubt. Id. at 602.

Defendant is correct that the Jones-Apprendi-Ring trilogy establishes that aggravating factors in a capital case must be found by the jury beyond a reasonable doubt during the penalty phase, because a defendant's increased sentence - from the statutory maximum prison term to a death sentence - is conditioned on the jury's finding of these factors. See United States v. Higgs, 353 F.3d 281, 298 (2003) [holding "with the exception of a prior conviction, those intent and aggravating factors which the government intends to rely upon to render a defendant death-eligible under the FDPA are the functional equivalents of elements of the capital offenses and must be charged in the indictment, submitted to the petit jury, and proved beyond a reasonable doubt."].

Contrary to Defendant's assertion, however, the jury's consideration of whether the aggravating factors outweigh the mitigating factors is not a determination that increases the defendant's maximum sentence. As multiple Courts have held, a defendant is already made "death penalty eligible" before the jury begins weighing the factors such that no greater sentence than death can result from the weighing. See United States v. Gooch, 2006 U.S. Dist. LEXIS 91892 at *17-24 (D.D.C. 2006); United States v. Diaz, 2007 U.S. Dist. LEXIS 18442, at *13-15 (N.D.Cal. 2007); United States v. Natson, 444 F. Supp. 2d 1296, 1304 (M.D.Ga. 2006); United States v. Henderson, 461 F. Supp. 2d 133, 135 (S.D.N.Y. 2006). As the Court in Diaz explained, "the weighing determination is only an issue of sentence selection rather than eligibility for a particular sentence" and as such need not be found beyond a reasonable doubt. Diaz, 2007 U.S. Dist. LEXIS 18442, at *14. Given the depth of the precedent on this issue, this Court is in agreement that the FDPA is not made unconstitutional by the fact that it fails to impose a "beyond a reasonable doubt" standard on

the jury's consideration of whether the aggravating factors outweigh the mitigating factors sufficiently to justify a sentence of death.[6]

### 3. Whether the FDPA's Evidentiary Standard Violates the Constitution

Pursuant to the FDPA,

[t]he government may present any information relevant to an aggravating factor for which notice has been provided under subsection (a). . . . Information is admissible regardless of its admissibility under the rules governing admission of evidence at criminal trials except that information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury.

18 U.S.C. § 3593(c). Defendant alleges that the FDPA's "relaxed" evidentiary standards erode the protections set forth in the Federal Rules of Evidence and violate the Supreme Court's mandate that a jury's decision to impose a death sentence be governed by a "heightened sense of reliability." See Woodson v. North Carolina, 428 U.S. 280, 305 (1976). Defendant's argument confuses the Supreme Court's guidance on this issue and erroneously equates the FRE with Constitutional rights.

First, in holding that a jury's decision to impose death must be governed by a "heightened sense of reliability," the Supreme Court explained such a requirement is met by the introduction of

---

[6] In addition to holding that a "beyond a reasonable doubt standard" does not apply to the jury's weighing of the factors, this Court notes that nowhere does the FDPA indicate the jury must - before imposing a sentence of death - definitively find the aggravating factors outweigh the mitigating factors. See United States v. Lecco, 2007 U.S. Dist. LEXIS 26048, at *5-6 (S.D.W.Va. Apr. 5, 2007); United States v. Purkey, 428 F.3d 738, 750 (8th Cir. 2006). As explained in Purkey, the weighing of the aggravating and mitigating factors is not an "elemental fact for which the grand jury must find probable cause." Rather, it is a "consideration," or a "lens through which the jury must focus the facts that it has found to produce an individualized determination regarding 'whether the defendant should be sentenced to death, to life imprisonment without possibility of release or some other lesser sentence.'" (Id., quoting 18 U.S.C. § 3593(e)).

*more*, not less - as Defendant asserts - evidence of aggravating and mitigating factors.  See Gregg v. Georgia, 428 U.S. 153, 203-4 (1976) [holding that the jury in a death penalty hearing should have as much information as possible before making a sentencing decision].  The FDPA - by limiting the exclusion of evidence to that evidence whose probative value is outweighed by the danger of unfair prejudice, confusion of the issues or misleading of the jury - "promotes" as opposed to undermines the "heightened reliability" standard set forth by the Supreme Court.  See United States v. Fell, 360 F.3d 135, 144 (2nd Cir. 2004); see, also, United States v. Fulks, 454 F.3d 410, 437-38 (4th Cir. 2006).

Second, the FDPA is not made unconstitutional by the fact that it allows for the admissibility of evidence otherwise excludable under the FRE.  See, Fell, 360 F.3d at 144.  This is so because the FRE "do not set forth the constitutional parameters of admissible evidence, nor does a criminal defendant have a constitutional right to have the FRE in place."  Id.; see, also, Fulks, 454 F.3d at 438. Furthermore, the FDPA provides Defendant with "constitutionally sufficient evidentiary protections," because  the judge - the "gatekeeper of constitutionally permissible evidence" - retains the authority to exclude any evidence that violates a defendant's Fifth or Sixth Amendment rights.  Fell, 360 F.3d at 145; see, also, Fulks, 454 F.3d at 438  [holding that trial judges may be relied on to "exclude evidence that transgresses a defendant's constitutional rights."].

Accordingly, the FDPA's evidentiary standards set forth in section 3593(c) "withstand constitutional scrutiny" and the resolution of any constitutional challenge to specific evidence sought to be introduced by the government may be entrusted to the discretion of the trial judge.

    4.    <u>Whether the FDPA Violates the Constitution by Failing to Provide for Meaningful Appellate Review</u>.

Defendant alleges the FDPA is unconstitutional because it fails to provide for mandatory, automatic appellate review - a protection Defendant alleges is necessary to prevent arbitrary and

capricious death sentences. The FDPA's appellate review provision provides,

> In a case in which a sentence of death is imposed, the sentence shall be subject to review by the court of appeals upon appeal by the defendant. Notice of appeal must be filed within the time specified for the filing of a notice of appeal. . . . The court of appeals shall review the entire record in the case, including 1) the evidence submitted during the trial; 2) the information submitted during the sentencing hearing; 3) the procedures employed in the sentencing hearing; and 4) the special findings returned under section 3593(d).

18 U.S.C. § 3595.

While the Supreme Court requires meaningful appellate review in death penalty cases, see Parker v. Dugger, 498 U.S. 308, 321 (1990), and has characterized an automatic appeal provision as an "important additional safeguard," Gregg, 428 U.S. at 198, the Court has never held that an automatic appeal provision is constitutionally required. See Cooper, 91 F. Supp. 2d at 99; Gooch, 2006 U.S. Dist. LEXIS 91892, at *99; Davis, 904 F. Supp. at 563. Additionally, the fact that the FDPA places the burden of appeal on a capital defendant does not render the statute unconstitutional, because a capital defendant is afforded the assistance of at least two counsel who can presumably advise him of his right to appeal. See Cooper, 91 F. Supp. 2d at 99; Gooch, 2006 U.S. Dist. LEXIS 91892 at *32. Accordingly, this Court agrees with the Gooch holding that "the appellate review provisions of the FDPA [are] constitutionally sufficient, notwithstanding that appeal is not automatic." Id.

5.    Whether the FDPA's Use of Nonstatutory Aggravating Factors Violates the

Constitution

a.　Whether the FDPA's Broad Allowance for Nonstatutory Aggravating Factors Violates the Eighth Amendment's Prohibition Against Cruel and Unusual Punishment.

As established in section B.1, above, the Eighth Amendment, in prohibiting the infliction of cruel and unusual punishment, requires that a death penalty statute "genuinely narrow the class of persons eligible for the death penalty and . . . reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder." Zant, 462 U.S. at 876; see, also, Godfrey, 446 U.S. at 428-29; Lewis, 497 U.S. at 774. Pursuant to the FDPA, while the Government must prove the existence of at least one "statutory" aggravating factor set forth in section 3592(c), it may otherwise present "any information relevant to an aggravating factor for which notice has been provided under [3593(a)]." Id. at § 3593(c). In the present case, in addition to the two statutory aggravating factors, the Government alleged in its Notice that Defendant "presents a threat of future dangerousness; cremated the victim; committed a sexual act against the victim shortly before he killed her; and the effect if the offense on the victim's family, including leaving the victim's two young sons motherless." Defendant argues the FDPA's loose restriction on the Government's use of nonstatutory factors violates the Supreme Court's mandate that the jury's decision to impose death be guided by "carefully defined standards that must narrow a sentencer's discretion." McClesky v. Kemp, 481 U.S. 279, 304 (1987). Defendant alleges that as the FDPA presently stands, "the factors that would persuade a jury in any given case to impose death would not be limited to 'clear and objective' criteria, . . . but would be restricted only by the imagination of the prosecutor."

Contrary to Defendant's assertion, the Supreme Court has held that a death penalty statute is not made unconstitutional by broadly providing for the use of nonstatutory aggravating factors.

In Zant, the Supreme Court evaluated the constitutionality of a state death penalty statute and held "the statutory aggravating circumstances play a constitutionally necessary function at the stage of legislative definition: they circumscribe the class of persons eligible for the death penalty. But the Constitution does not require the jury to ignore other possible aggravating factors in the process of selecting, from among that class, those defendants who will actually be sentenced to death." Zant, 462 U.S. at 878. The Court did place limits on the use of nonstatutory aggravating factors, however, holding that the jury may consider additional aggravating factors so long as the factors "genuinely narrow the class of persons eligible for the death penalty and . . . reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder." Id. at 877; see, also, Barclay v. Florida, 463 U.S. 939, 967 (1983) [holding an aggravating factor is constitutional so long as it is ""relevant to the character of the defendant or the circumstances of the crime"].

The Fourth Circuit, relying on the Supreme Court's holding in Zant, evaluated the constitutionality of the FDPA's use of nonstatutory aggravating factors and held the statute was not unconstitutional "merely because it allows the sentencing jury to weigh nonstatutory aggravating factors when deciding whether to impose the sentence of death upon a defendant convicted of a death-eligible offense." Higgs, 353 F.3d at 320. As the Court held, "[o]nce a defendant has been rendered eligible for the death penalty by the jury's finding of a statutory aggravating factor, the use of nonstatutory aggravating factors serves only to individualize the sentencing determination." Id. Consistent with the above Supreme Court and Fourth Circuit precedent, the FDPA's use of nonstatutory aggravating factors does not render the statute unconstitutional. This Court notes that any determinations as to the relevancy or permissible scope of nonstatutory aggravating factors sought to be introduced to the jury is best left to the

discretion of the trial judge.

        b.     <u>Whether the FDPA's Use of Nonstatutory Aggravating Factors Violates the Separation of Powers and Non-Delegation Doctrines</u>.

Defendant alleges the FDPA's lack of restriction on the use of nonstatutory aggravating factors unconstitutionally grants to the prosecution the legislative task of defining permissible nonstatutory aggravating factors. Defendant's argument is without merit. As explained by the Fourth Circuit in <u>Higgs</u>, the FDPA does not delegate legislative powers to the prosecution, because "the prosecutor's discretion with regard to defining what is a death-eligible offense is wholly circumscribed by the statute's requirement that the jury unanimously find at least one aggravating factor before the defendant becomes death eligible." <u>Higgs</u>, 353 F.3d at 321. Only after the jury finds for the existence of the "legislatively-defined factors" - the mental intent element and one of the aggravating factors listed in section 3592(c) - may the government proceed to present evidence of nonstatutory aggravating factors. <u>Id.</u> The Court further held that even if the grant of discretion to prosecutors could be construed as a delegation of legislative function, "such delegation is constitutionally permissible." <u>Id.</u>; <u>see</u>, <u>also</u>, <u>United States v. McCullah</u>, 76 F.3d 1087, 1106 (10th Cir. 1996) [holding "the prosecutorial discretion to promulgate non-statutory aggravating factors falls squarely within the permissible delegation of power to the Executive Branch."].

        c.     <u>Whether the FDPA's Use of Nonstatutory Aggravating Factors Violates the Ex Post Facto Clause of Article 1, Section 9, Clause 3 of the Constitution</u>.

Defendant alleges the FDPA, in permitting the government to define "nonstatutory aggravating factors" not enumerated in the statute, permits the "retroactive application of aggravating factors to crimes committed before those factors were identified" in violation of the Ex Post Facto Clause of Article I of the Constitution. <u>See</u> <u>United States v. Diaz</u>, 2007 U.S. Dist.

LEXIS 18442, at *46 (N.D.Cal. 2007).  While Defendant correctly asserts that a statute may not make more burdensome the punishment for a crime <u>after</u> it was committed, Defendant misconstrues the relationship between the jury's finding that a nonstatutory aggravating factor alleging prior conduct exists, and the final sentence imposed by the jury.  As explained by the Court in <u>Higgs</u>, "nonstatutory aggravating factors and mitigating factors are weighed by the jury to make the individualized determination to impose the death sentence upon a defendant who has already been found eligible. *They do not increase the possible punishment or alter the elements of the offense*."  <u>Higgs</u>, 353 F.3d at 322 (emphasis added).  Similarly, as explained by the Court in <u>United States v. Frank</u>, 8 F. Supp. 2d 253, 276 (S.D.N.Y 1998), "[t]he defendant is judged as guilty or not, and eligible for the punishment of death or not, on the basis of criteria set by Congress well before the commission of the offense."  Accordingly, the nonstatutory aggravating factors alleged by the Government do not increase the punishment for Defendant's prior conduct but rather guide the jury in determining whether a sentence of life or death should be imposed *after* Defendant is ruled eligible for a death sentence.  <u>See</u> <u>id.</u>  The FDPA's grant of authority to the government to characterize Defendant's prior conduct as a nonstatutory aggravating factor therefore does not violate the Ex Post Facto clause of the Constitution.

      6.    <u>Whether the FDPA Violates the Eighth Amendment by Failing to Provide for Proportionality Review</u>.

Defendant asserts the Eighth Amendment requires proportionality review in statutes such as the FDPA that permit the jury to weigh nonstatutory aggravating factors in deciding whether to impose a death sentence.  As explained by the Supreme Court, "proportionality review presumes that the death sentence is not proportionate to the crime in the traditional sense.  It purports to inquire instead whether the penalty is nonetheless unacceptable in a particular case because

disproportionate to the punishment imposed on others convicted of the same crime." Pully v. Harris, 465 U.S. 37, 44-45 (1984). Contrary to Defendant's assertion, the Supreme Court has held that while proportionality review is a "useful safeguard against arbitrary imposition of the death penalty," it is not required. Id.; see, also, Higgs, 353 F.3d at 321. Although Defendant attempts to distinguish Pully by noting the death penalty statute at issue in Pully did not employ nonstatutory aggravating factors like the FDPA, the Court in United States v. Jones, 132 F.3d 232, 240-41 (5th Cir. 1998), rejected this same argument and held "the Constitution does not mandate proportionality review when the capital sentencing scheme permits the jury to consider nonstatutory aggravating factors as long as the statute provides for other safeguards against an arbitrary imposition of the death penalty." Recognized safeguards inherent to the FDPA include that the jury must find beyond a reasonable doubt the existence of a particular mental intent and at least one statutory aggravating factor. See United States v. Allen, 247 F.3d 741, 760 (8th Cir. 2001), vacated on other grounds, 536 U.S. 953 (2002).

      7.     Whether the FDPA Violates the Eighth Amendment Under All Circumstances.

Defendant preserves for appellate review his argument that the imposition of capital punishment is cruel and unusual under all circumstances and is therefore in violation of the Eighth Amendment. This argument is presently foreclosed by Supreme Court precedent. See Gregg, 428 U.S. at 187; McCleskey, 481 U.S. at 301-02.

      8.     Whether the FDPA Violates Defendant's Constitutional Right to Present Mitigating Evidence.

Defendant asserts that the FDPA limits his rights under the Eighth and Fourteenth Amendments to present all relevant mitigating factors to the jury for their consideration. See

Lockett v. Ohio, 438 U.S. 586, 608 (1978). As Defendant accurately notes, the language of section 3592(a) limits the introduction of evidence he was impaired during the commission of the crime to evidence that he was "significantly" impaired. 18 U.S.C. § 3592(a)(1). Similarly, section 3592(a) limits the introduction of evidence of duress to evidence of "unusual and substantial" duress. Id. at 3592(a)(2). Despite these limitations, additional language contained with the FDPA operates to sufficiently protect Defendant's right to present mitigating evidence. For example, the FDPA makes clear that the list of factors enumerated in section 3592(a) is not an exhaustive list: "in determining whether a sentence of death is to be imposed on a defendant, the finder of fact shall consider any mitigating factor, including [the enumerated factors]." 18 U.S.C. § 3592(a). Additionally, the statute states, "other factors in the defendant's background, record or character or any other circumstance of the offense that mitigate against imposition of the death sentence" may be considered. Id. at 3592(a)(8).

Defendant also argues the FDPA unconstitutionally prevents the jury from considering mitigating evidence relating to his race, color religious beliefs, national origin or sex. As set forth in section 3593(f), "in considering whether a sentence of death is justified, [the jury] shall not consider the race, color, religious beliefs, national origin or sex of the defendant." While some Courts have interpreted this instruction as prohibiting the jury's consideration of such factors only in aggravation, see Davis, 904 F. Supp. at 563; United States v. Nguyen, 928 F. Supp 1525, 1547 (1996), this Court disagrees with such an interpretation and joins those Courts that firmly hold that a defendant's race, religion, color, national origin or sex are "totally irrelevant to the sentencing process" and should not be considered by the jury - as either an aggravating or mitigating factor - at any point in the penalty phase. See Zant, 462 U.S. at 885; Cooper, 91 F. Supp. 2d at101; Gooch, 2006 U.S. Dist. LEXIS 91892, at *46. This does not, of course, preclude

the jury from considering the "effects and experiences" of the above factors. For example, "[i]f a defendant can show that his life has been marked by discrimination or some other set of experiences, irrespective of whether the result, in part, of his race [sic], then that properly might be admissible as relevant mitigating background or character evidence." United States v. Webster, 162 F.3d 308, 356-57 (5th Cir 1998). For the above reasons, this Court holds the FDPA is not made unconstitutional by admonishing the jury they are not to consider Defendant's race, color, religious beliefs, national origin and sex. If anything, such an admonition affirms the constitutionality of the statute.

     9.    <u>Whether the FDPA Violates the Constitution by Failing to Provide the Jury With a Standard for Balancing Aggravating and Mitigating Factors</u>.

Defendant alleges the FDPA's lack of guidance to the jury on how to balance the aggravating and mitigating factors is "constitutionally flawed." Pursuant to section 3593(e) of the statute, the jury is instructed to "consider whether all the aggravating factor or factors found to exist sufficiently outweigh all the mitigation factors or factor found to exist to justify a sentence of death, or in absence of mitigating factor, whether the aggravating factor or factors alone are sufficient to justify a sentence of death." 18 U.S.C. section 3593(e). Defendant argues that the statute's language fails to instruct the jury it must consider the quality - not merely the quantity - of the aggravating and mitigating factors. This failure, Defendant alleges, risks that the jury will impose a death sentence simply because the number of aggravating factors outweigh the number of mitigating factors.

This Court disagrees with Defendant and holds the FDPA is constitutional despite failing to enunciate a precise standard for the jury to use in balancing the aggravating and mitigating factors. First and foremost, the Supreme Court has upheld the constitutionality of statutes like the

FDPA which fail to enunciate specific standards for the jury's weighing of the factors. See Zant, 462 U.S. at 875; Tuipaepa, 512 U.S. at 979. Second, this Court agrees with the Court's position in Gooch that Defendant's present argument merely resubmits to the Court the previously considered question of whether the weighing process "constitutes a factual determination that must be proved beyond a reasonable doubt." See Gooch, 2006 U.S. Dist. LEXIS 91892, at *49. Accordingly, this Court reiterates its analysis in section B.2., above, and holds that the FDPA sufficiently guides the jury in its consideration of the aggravating and mitigating factors and is therefore constitutional.

      10.     Whether the FDPA Unconstitutionally Limits Defendant's Opportunity to Rebut the Government's Argument.

Defendant next challenges the FDPA's allocation of argument during the penalty phase. Pursuant to section 3593(c) of the FDPA, the government has the opportunity to make the first and last arguments during the penalty phase. The defendant has the opportunity to argue only once: in between the government's arguments. 18 U.S.C. § 3593(c). Defendant alleges the lack of opportunity afforded to him to rebut the government's final argument gives the government in inherent advantage and violates his right to due process of law, effective assistance of counsel, and a reliable sentencing determination.

Multiple courts disagree with Defendant's contention and hold that the FDPA's allocation of argument is constitutional. See Gooch, 2006 U.S. Dist. LEXIS 91892, at *50-51; United States v. Minerd, 176 F. Supp. 2d, 424, 437 (W.D. Pa. 2001); United States v. Cooper, 754 F. Supp. 617, 627 n.17. First, as held by Gooch, "the order of arguments is entirely consistent with the allocation of the burden of proof." Gooch, 2006 U.S. Dist. LEXIS 91892, at *51. The government, after all, has the burden of proving both the intent and statutory aggravating factor

beyond a reasonable doubt.   The defendant, in contrast, need only prove the existence of a

mitigating factor by a preponderance of the evidence.  Id.  Second, the allocation is consistent

with the procedures set forth in Rule 29.1 of the Federal Rules of Criminal Procedure.  Id.; see,

also, Minerd, 176 F. Supp. 2d at 437.  Finally, the statutory protections, including the respective

burdens of proof and the requirement that the jury unanimously agree to impose death, "incline

towards life, not death" such that the FDPA's allocation of argument is appropriate.  Gooch, 2006

U.S. Dist. LEXIS 91892, at *51.

      11.    Whether the FDPA Unconstitutionally Restricts Defendant's Ability to Waive a
               Jury Trial During the Penalty Phase.

Defendant alleges that the FDPA unconstitutionally deprives him of the right to choose

whether his penalty phase will be heard by a judge or a jury.  Pursuant to section 3593(b) of the

FDPA, the penalty phase may be heard "before the court alone, upon motion of the defendant and

with the approval of the attorney for the government;" otherwise, the penalty phase will be heard

by a jury.  Defendant argues this language not only curtails his constitutional right to choose the

fairest forum - judge or jury - but also grants to the government a right to trial by jury in defiance

of both history and logic.

Defendant's argument as to the existence of a constitutional right to waive a jury trial is

without support.  Quite to the contrary, the Court in Singer v. United States, 380 U.S. 24, 25

(1965), held "a defendant's only constitutional right is to an impartial trial by jury."  The Court in

Singer came to its conclusion after "finding no support for the proposition that criminal

defendants had a common law right to insist on a bench trial, and noting that the Constitution, by

its own terms, does not confer such a right."  Id. at 36.  Furthermore, the Court held there existed

"no constitutional impediment to conditioning a waiver of this right on the consent of the

prosecuting attorney and the trial judge when, if either refuses to consent, the result is simply that the defendant is subject to an impartial trial by jury - the very thing that the Constitution guarantees him" Id. at 34-36.

While the Court in Singer did imagine a scenario in which "a defendant's reasons for wanting to be tried by a judge alone are so compelling that the government's insistence on trial by jury would result in a denial to a defendant of an impartial trial," such a scenario is nonexistent in the present case. Rather, the reasons stated by Defendant in support of his preference for a judge - that racial considerations may seep into the jury's decision making process and that the jury will be inherently less sympathetic to the case for mitigation - have been held as falling outside of the scenario imagined by Singer. See Cooper, 91 F. Supp 2d at 103; Gooch, 2006 U.S. Dist. LEXIS 91892, at *54-55.

Accordingly, this Court finds the FDPA is constitutional despite conditioning a defendant's waiver of his right to a jury trial on the consent of the government.

12. <u>Whether the FDPA's Remand Provision Violates the Double Jeopardy Clause of the Fifth Amendment</u>.

Defendant alleges the remand provision of the FDPA violates the Double Jeopardy Clause of the Fifth Amendment. Pursuant to section 3595(c)(2)(B) of the statute, "whenever the court of appeals finds . . . [t]he admissible evidence and information adduced does not support the special finding of the existence of the required aggravating factor, . . . the court shall remand the case for reconsideration under § 3593 or imposition of a sentence other than death." 18 U.S.C. § 3595(c)(2). Defendant argues the statute, by authorizing the "re-imposition of a death sentence after an appellate finding that the evidence was insufficient to support the existence of a statutory aggravating circumstance - a legal requirement for a valid death sentence," violates his right to be

free from double jeopardy. As he explains, a finding that the evidence was insufficient is tantamount to an acquittal and should bar a subsequent request for the death penalty.

The Court in <u>Davis</u>, 904 F. Supp at 562-563, agrees with Defendant that double jeopardy would result if a matter described in section 3595(c)(2)(B) is remanded for reconsideration of a death sentence versus for a sentence less than death. However, the <u>Davis</u> Court also pointed out that the FDPA does not explicitly compel remand for reconsideration of a death sentence in such instance. Rather, the statute is vague as to what is required upon remand. The Court in <u>Davis</u> held that such an ambiguity must be resolved in favor of the statute's constitutionality and as such is not interpreted as requiring the reconsideration of a death sentence upon a finding described in section 3595(c)(2)(B). <u>Id.</u> at 563; <u>see also</u> <u>Gooch</u>, 2006 U.S. Dist LEXIS 91892, at *56 [holding "read the most logical way, and in conjunction with constitutional protections, if the Court of Appeals finds insufficient evidence of the statutory aggravating factor, any remand would be for imposition of a sentence other than death."]. Accordingly, the FDPA's remand provision is interpreted as constitutional.

    13.    <u>Whether the FDPA Violates the Indictment Clause of the Fifth Amendment Because it Removes From the Grand Jury the Historical Role of Determining Who is Eligible for a Death Sentence</u>.

Defendant contends the FDPA violates the Indictment Clause of the Fifth Amendment because it removes from the grand jury and gives to the attorney general the power to decide who is death penalty eligible. Defendant cites no authority for his proposition and this Court was unable to locate any. Furthermore, as explained below in section C.1., below, the grand jury's constitutionally protected role of serving as a check on prosecutorial power in capital cases is preserved by the requirement that the grand jury find probable cause exists to warrant the special findings supporting the imposition of the death penalty. <u>United States v. Haynes</u>, 269 F. Supp. 2d

970, 981 (W.D.Tenn. 2003). Accordingly, Defendant's motion to declare the FDPA

unconstitutional due to its alleged impermissible shift in power to the attorney general is denied.

C.      Defendant's Motion to Dismiss the Government's Notice of Intent to Seek the Death
        Penalty.

        1.      Whether the "Special Findings" Should be Stricken From the Indictment Because
                the Grand Jury Was Not Informed its "Special Findings" Could Result in
                Defendant's Death.

        Pursuant to the Indictment Clause of the Fifth Amendment, "no person shall be held to

answer for a capital, or otherwise, infamous crime, unless on a presentment or indictment of a

Grand Jury." U.S. Const. amend. V. Historically, criminal statutes were such that the grand jury

was fully aware of when its charging decision resulted in a capital case. This was because states

previously "followed the common-law practice of making death the exclusive and mandatory

sentence for certain specified offenses," including, "all homicides that were not involuntary,

provoked, justified, or excused." Woodson v. North Carolina, 428 U.S. 280, 289 (1976); see,

also, Gooch, 2006 U.S. Dist. LEXIS 91891, at *58. Acknowledging the role of the grand jury in

the charging of offenses, the Supreme Court explained, "the grand jury, like the petit jury, acts as

a vital check against the wrongful exercise of power by the State and its prosecutors. It controls

not only the initial decision to indict, but also significant decisions such as how many counts to

charge and whether to charge a greater or lesser offense, including the important decision to

charge a capital offense." Campbell v. Louisiana, 523 U.S. 392, 399 (1998) (internal quotation

marks and citation omitted).

        Modern day criminal statutes such as the FDPA, however, differ in whether they classify

murder as a capital offense and are highly individualized in the sentences assigned for crimes

such as murder. Campbell, 523 U.S. at 399; see, also, Gooch, 2006 U.S. Dist. LEXIS 91892, at

*60.  As such, a grand jury may not always know the consequence of their charging decisions, including whether they are indicting for a capital offense.  Defendant argues this removal from the grand jury of the power to control when an indictment results in death violates the Indictment Clause of the Fifth Amendment.  Arguing that the grand jury in the present case was not informed of the consequences of its "Special Findings," Defendant asks this Court to strike the "Special Findings" from the Notice.

Multiple Courts disagree with Defendant's position.  As articulated by the District Court in United States v. Haynes, 269 F. Supp. 2d 970, 981 (W.D.Tenn. 2003), "the grand jury's role is not to decide whether probable cause supports the imposition of a particular sentence against a charged individual; rather, the grand jury check on prosecutorial power stems from its independent factual determination of the existence of probable cause for the essential elements of the charged offense."  See United States v. Lecco, 2007 U.S. Dist. LEXIS 26048, at *8 (S.D.W.Va. Apr.5, 2007); Branzburg v. Hayes, 408 U.S. 665, 686-87 (1972).  Accordingly, the Indictment is not rendered unconstitutional by the fact that the grand jury may not have been informed it was indicting Defendant of a capital offense.

      2.      Whether the Notice Should be Dismissed Because the Indictment Violated the Fifth and Sixth Amendments.

Defendant alleges the Grand Jury's Indictment violates the Fifth and Sixth Amendment rights because it did not charge in the "Special Findings" the third "fact" necessary to impose a death sentence, namely that the aggravating factors outweigh the mitigating factors sufficiently to justify a sentence of death.  As the "Special Findings" of the Indictment indicates, the grand jury found for two "prerequisite" facts necessary to impose a death sentence: 1) that Defendant acted

with the mental state articulated in section 3591(a)(2)(c) and 2) that there existed two "section 3592(c)" aggravating factors. The "Special Findings" did not include any finding that the aggravating factors outweighed the mitigating factors. Defendant relies on the <u>Apprendi</u>-<u>Ring</u>-<u>Jones</u> trilogy to assert that because the latter finding is a fact prerequisite to an increased sentence of death, it must be charged in the Indictment.

This Court need not undertake a lengthy analysis of this issue because it has already held in its Sixth Amendment discussion in section B.2., above, that the jury's determination that the aggravating factors outweigh the mitigating factors sufficiently to justify a sentence of death is not a factual finding "prerequisite" to an increased maximum sentence and therefore need not be charged in the Indictment. As explained above in section B.2, a defendant is already deemed "death eligible" (due to the jury's finding of the intent element and aggravating factor(s)) at the point at which it engages in weighing the aggravating and mitigating factors. <u>See</u> 18 U.S.C. at §§ 3593(d), (e). Accordingly, the jury's conclusion after weighing the factors cannot in any logical way increase a defendant's sentence because there exists no greater sentence than death; the jury's conclusion merely bears on its decision to recommend death or a life sentence. For the reasons stated herein and in section B.2, the Indictment need not charge "the aggravating factors sufficiently outweigh the mitigating factors to justify a sentence of death." <u>See</u> <u>Gooch</u>, 2006 U.S. Dist. LEXIS 91892, at *17-24; <u>Diaz</u>, 2007 U.S. Dist. LEXIS 18442, at *13-15; <u>United States v. Natson</u>, 444 F. Supp. 2d 1296, 1304 (M.D.G.A. 2006), <u>United States v. Henderson</u>, 461 F. Supp. 2d 133, 135 (S.D.N.Y. 2006).

3.    <u>Whether the Notice Should be Dismissed Because it Failed to Provide Sufficient Notice of the Mental Intent Factor and Aggravating Factors</u>.

Defendant argues the Government's Notice fails to provide constitutionally sufficient

notice of the facts surrounding the alleged mental intent factor and the aggravating factors and moves this Court to dismiss the Notice on these grounds.

This Court denies Defendant's motion to dismiss based on the alleged insufficiency of notice of the mental intent factor because the FDPA does not require the mental intent factor be alleged in the Notice.  See 18 U.S.C. § 3593(a); see, also, See Gooch, 2006 U.S. Dist, LEXIS 91892, at *68.  Rather, section 3593(a) requires only that aggravating factors be alleged in the Notice.  Accordingly, the question of the sufficiency of notice of the mental intent factor is moot.

Regarding the sufficiency of notice of the aggravating factors, the FDPA does not explicitly require the government to provide specific evidence in its Notice of the aggravating factors.  See United States v. Wilson, 493 F. Supp. 2d 364, 377 (E.D.N.Y 2006); United States v. Battle, 173 F.3d 1343, 1347 (11th Cir. 1999); United States v. Nguyen, 928 F. Supp. 1525, 1545-46 (D. Kan. 1996).  Nevertheless, Courts have recognized that "at a minimum, due process requires a defendant to receive sufficient notice of aggravating factors to enable him to respond and to prepare his case in rebuttal."  United States v. Plaza, 179 F. Supp. 2d 464, 471 (E.D.Penn. 2001).  The Notice "must be considered in conjunction with the offenses as charged in the indictment, which can provide requisite specificity as to an otherwise insufficient notice." Id. Although the Indictment in the present case sheds some additional light on the nature of the evidence to be introduced in support of the aggravating factors alleged in the Notice, this Court recognizes the importance of a capital defendant being sufficiently apprised of the evidence against him to avoid surprise at trial and orders the Government to submit a sufficiently detailed Bill of Particulars regarding the aggravating factors listed in the Notice.

4.      Whether the Notice Should be Dismissed Because the Government Alleged Four Mental States in the Notice.

Defendant's heading suggests he challenges the Government's use of multiple mental intent states in the Notice. This Court observes the Government alleged only one mental intent factor in its Notice and as such need not evaluate the constitutionality of alleging multiple mental states. Any additional argument Defendant intends to assert as to the sufficiency of the notice of the alleged mental state is addressed by this Court in section C.3., above.

     5.     <u>Whether the Notice Should be Dismissed Because it Relies on Unconstitutionally Vague Victim Impact Evidence</u>.

Defendant alleges that the FDPA's loose restriction on the admission of victim impact evidence during the penalty phase violates his Eighth Amendment right to be free from arbitrary and capricious punishments. Section 3593 of the FDPA provides in pertinent part:

> [t]he factors for which notice is provided under this subsection may include factors concerning the effect of the offense on the victim and the victim's family, and may include oral testimony, a victim impact statement that identifies the victim of the offense and the extent and scope of the injury and loss suffered by the victim and the victim's family, and any other relevant information.

18 U.S.C. § 3593(a). Defendant alleges the above "nonstatutory factor is set forth in broad, conclusory and utterly vague sentences" such that it is "likely to inflame a jury and thereby increase the risk that a death sentence will be imposed for arbitrary and capricious reasons."[7]

As Defendant concedes, the Supreme Court presently holds that the Eighth Amendment does not per se prohibit a jury from considering victim impact evidence. <u>Payne v. Tennessee</u>, 501 U.S. 808, (1991). Rather, evidence and argument relating to a "quick glimpse" of the victim's

life and the impact of the victim's death on the victim's family are admissible during the penalty phase of the trial, because the jury needs to have before it evidence of the specific harm caused by the defendant in order "assess meaningfully the defendant's moral culpability and blameworthiness." Id. at 828, 829 fn.2; see, also, Fulks, 454 F.3d at 435-436. The task of defining the precise scope of and manner of admitting the victim impact evidence is best left to the discretion of the trial judge. Notwithstanding this Court's holding, the Court recognizes the importance of a capital defendant being sufficiently apprised of the evidence against him to avoid surprise at trial and orders the Government to submit a sufficiently detailed Bill of Particulars regarding the victim impact evidence listed in the Notice.

6.      Whether the Notice Must be Dismissed Because the Nonstatutory Aggravating Factor of "Victim Impact Evidence" Does not Provide Sufficient Notice.

Defendant argues the Notice's aggravating factor alleging, "as evidenced by the victim's personal characteristics as an individual human being and the impact of the offense upon the victim's family and friends, the defendant caused injury, harm and loss to the victim and the victim's family and friends" fails to provide sufficient notice to Defendant of the facts surrounding the factor. This Court first notes that no such aggravating factor is alleged in the present Notice. Rather, the present Notice alleges that "the effect of the offense on the victim and the victim's family, including leaving the victim's two young sons motherless." Furthermore, this Court holds that its discussion in section C.5., above, sufficiently addresses the constitutionality and admissibility of any victim impact evidence sought to be introduced by the Government.

7.      Whether the Notice's Statutory Aggravating Factors Should be Stricken Because They are Vague and Violate the Eighth Amendment.

Defendant alleges the two statutory aggravating factors alleged by the Government's in its

Notice are vague and over-broad such that they threaten to expose him to arbitrary and capricious punishment in violation of the Eighth Amendment. In its Notice, the Government alleged Defendant "committed the offense after substantial planning and premeditation to cause the death of a person," and "procured the commission of the offense by payment and the promise of payment, of anything of pecuniary value." Defendant argues these factors categorize a broad class of defendants involved in murder-for-hire from which only a few will be randomly selected for the death penalty.

This Court has previously considered the constitutionality of the FDPA's statutory aggravating factors (see section B.1, above) and holds the factors are constitutional and should not be stricken from the Notice. Notwithstanding its holding, this Court recognizes the importance of a capital defendant being sufficiently apprised of the evidence against him to avoid surprise at trial and orders the Government to submit a sufficiently detailed Bill of Particulars relating to the aggravating factors listed in the Notice.

8.     <u>Whether the Notice's NonStatutory Aggravating Factors Should be Stricken Because the FDPA Fails to Limit the Government's Use of NonStatutory Aggravating Factors</u>.

Defendant alleges the nonstatutory aggravating factors alleged in the Government's Notice violate the Eighth Amendment and should be stricken. Specifically, Defendant claims that FDPA unconstitutionally limits the government's use of nonstatutory aggravating factors to the "imagination of the prosecutor" and thereby injects "impermissible randomness into the process" and fails to narrow the class of persons eligible for the death penalty. As alleged by the Government in the Notice pursuant to section 3593(a)(2), Defendant "presents a threat of future

dangerousness; cremated the victim; committed a sexual act against the victim shortly before he killed her; and the effect of the offense on the victim's family, including leaving the victim's two young sons motherless."

In section B.5.a, above, this Court upheld the Constitutionality of the FDPA's provision for the use of nonstatutory aggravating factors. For the same reasons articulated in its previous analysis, this Court upholds the Constitutionality of the nonstatutory aggravating factors listed in the Government's Notice and denies Defendant's motion to strike the factors from the Notice. Notwithstanding this Court's holding, the Court recognizes the importance of a capital defendant being sufficiently apprised of the evidence against him to avoid surprise at trial and orders the Government to submit a sufficiently detailed Bill of Particulars regarding the aggravating factors listed in the Notice.

### IV.  Recommendation

For the foregoing reasons, I recommend that:

1.      Defendant's Motion to Declare the Federal Death Penalty Act Unconstitutional be **DENIED** because the specific provisions Defendant contends are unconstitutional have been upheld as constitutional.

2.      Defendant's Motion to Strike  the "Special Findings" from the Indictment be **DENIED** because the "Special Findings" comply with the mandates of the Constitution and the Federal Death Penalty Act.

3.      Defendant's Motion to Dismiss the Notice of Intent to Seek the Death Penalty be **DENIED** because the Notice complies with the mandates of the Constitution and the Federal Death Penalty Act.

4.      The Government provide a sufficiently detailed Bill of Particulars regarding the

facts underlying all the aggravating factors - statutory and nonstatutory - listed in the Notice of Intent to Seek the Death Penalty to apprise Defendant of those aggravating factors sufficiently to avoid surprise at trial.

5.     Defendant's Motion for an Evidentiary Hearing be denied as moot.

Any party who appears *pro se* and any counsel of record, as applicable, may, within ten (10) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection.  A copy of such objections should be submitted to the District Court Judge of Record.  Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation.

DATED: September 27, 2007

/s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATED MAGISTRATE JUDGE