**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

EUGENE J. TALIK,

        Petitioner,

v.                            **Civil Action No. 5:09cv47**
                                     **Criminal Action No. 5:06cr51**
UNITED STATES OF AMERICA,          **(JUDGE STAMP)**

        Respondent.

## REPORT AND RECOMMENDATION
## THAT §2255 MOTION BE DENIED

## I. Introduction

On May 6, 2009, *pro se* petitioner, Eugene Talik ("Petitioner"), filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody.[1]  On the same day, Petitioner also filed a Motion for Habeas Corpus § 2255 Rule 6(b) Discovery[2] and a Motion to Stay Proceedings on Section 2255 Motion, to Allow Discovery,[3] permitting him to amend his § 2255 motion with its memorandum of law once discovery was complete.   Also on the same day, Petitioner filed a Motion to Appoint Counsel Under Section 2255 Rule 6(a).[4]  On May 12, 2009, the Government was ordered to respond.[5]  On May 29, 2009, the Government filed a Motion Requesting More Time to Respond.[6]  On June 4, 2009, the Government's motion for an extension

---

[1]Dkt.# 218.

[2]Dkt.# 219.

[3]Dkt.# 220.

[4]Dkt.# 221.

[5]Dkt.# 222.

[6]Dkt.# 224.

1

of time in which to respond was granted.[7]  The Government filed its response on August 10, 2009.[8]

The Petitioner filed Motion for Extension of Time to File Reply to Government Response on August

21, 2009,[9] which was granted by Order entered on August 24, 2009,[10] extending the time for reply

until September 5, 2009.  On September 8, 2009, Petitioner filed his reply, along with a Motion for

Leave to File Petitioner's Reply to Government's Response,[11] explaining that he had originally

mailed his reply on August 24, 2009, but it was returned to him on September 2, 2009.

## II. Facts

### A. Conviction and Sentence

On January 18, 2008, Petitioner signed a plea agreement by which he agreed to plead guilty

to Count 2, interstate domestic violence resulting in death, in violation of 18 U.S.C. §§ 2261(a)(1)

and (b)(1).  In the plea agreement, the parties stipulated that Counts One and Three of the indictment

would be dismissed.  Petitioner also waived his right to an appeal and to collaterally attack his

sentence.  Specifically, the Petitioner's plea agreement contained the following language regarding

his waiver:

> 5.  Waiver of Certain Appellate Rights
> A.      If the Court sentences the defendant pursuant to the agreement in Section 4,
> then the defendant waives the right: 1) to appeal the sentence imposed on any
> ground, including any appeal right conferred by 18 U.S.C. §3742; and, 2) to
> challenge the conviction or the sentence or the manner in which it was determined
> in any collateral attack, including but not limited to a motion brought under Title 28,
> United States Code, Section 2255.

---

[7] Dkt.# 225.

[8] Dkt.# 226.

[9] Dkt.# 229.

[10] Dkt.# 231.

[11] Dkt.# 235.

(Plea Agr. P. 3; Dkt. No. 177).

On January 21, 2008, Petitioner entered his plea in open court. Petitioner was 39 years old, a college graduate with a degree in accounting. (Plea Trans. P. 5; Dkt. No. 179). The Court specifically asked Petitioner if he understood the waiver of his appellate and post-conviction relief rights and Petitioner said "yes." (Id. at 15). The Court asked Petitioner's counsel if he believed petitioner understood the waiver of appellate and post-conviction relief rights and Petitioner's counsel said he was satisfied that Petitioner was aware of those rights. (Id. at 15). The Court then reviewed all the rights Petitioner was giving up by pleading guilty. (Id. at 18 - 22). During the plea hearing, the Government presented the testimony of Lisa M. Hack, Special Agent with the Federal Bureau of Investigation, to establish a factual basis for the plea. (Id. at 23 - 30). The Petitioner did not contest the factual basis of the plea.

After the Government presented the factual basis of the plea, the Petitioner advised the Court that he was guilty of Count 2 of the indictment. (Id. at 46). The Petitioner further stated under oath that no one had attempted to force him to plead guilty, and that he was pleading guilty of his own free will. (Id.). In addition, he testified that the plea was not the result of any promises other than those contained in the plea agreement. (Id.). The Petitioner testified that his attorney had adequately represented him, and that his attorney had left nothing undone. (Id. at 47). Finally, Petitioner said he was in fact guilty of the crime to which he was pleading guilty. (Id. at 47 - 48).

At the conclusion of the hearing, the Court determined that the plea was made freely and voluntarily, that the Petitioner understood the consequences of pleading guilty, and that the elements of the crime were established beyond a reasonable doubt. (Id. at 48). The Petitioner did not object to the Court's finding.

On May 6, 2008, Petitioner appeared before the Court for sentencing. After considering several factors, including the circumstances and brutal nature of the crime, the degree of premeditation involved, as well as the defendant's upbringing and personal history and the sentencing objectives of punishment, the Court sentenced the petitioner to a term of life in prison. (Sentencing Trans. P. 107-08; Dkt. No. 213).

**B.  Direct Appeal**

Petitioner did not file a direct appeal.

**C.  Federal Habeas Corpus**

**Petitioners' Contentions (Dkt.# 218)**

In his federal habeas petition and supporting memorandum of law, the Petitioner raises multiple ineffective assistance of counsel (IAC) issues for relief including:

(1) Counsel failed to investigate and/or prepare for trial, because

> (a) Counsel failed to investigate and interview prospective defense witnesses who could have corroborated Petitioner's version of the events and failed to interview witnesses for the prosecution;

> (b) Failed to investigate, develop or use available information that could have undermined the prosecution's case;

> (c) Did not investigate and develop a defense theory.

(2) Counsel gave erroneous advice to induce Petitioner to accept plea agreement because:

> (a) Counsel exerted improper pressure to coerce Petitioner to plead guilty;

> (b) Counsel threatened Petitioner with additional charges if he did not plead guilty;

> (c) Counsel threatened Petitioner with the specter of the death penalty if he did not accept the plea agreement;

> (d) Counsel coerced Petitioner's plea in a "late night, last minute offer;"

(e) Counsel provided improper advice as to the sentence to be imposed;

(f) Counsel was unprepared for trial.

(3)     Counsel was ineffective at sentencing because

(a) Counsel was too willing to accept the Government's version of the facts;

(b) Counsel failed to discredit the witnesses for the prosecution;

(c) Counsel failed to present mitigating evidence; and

(D) Counsel's closing argument was substandard, irrelevant to the situation and self-serving.

Petitioner alleges that he did not raise any of these issues in a direct appeal

because his counsel was ineffective for telling him that he had to waive his right to appeal.

### Government's Response (Dkt.# 226)

(a)  Petitioner's IAC claims are defeated by his entry of a guilty plea.

(b) Petitioner's guilty plea was knowing and voluntary, as evidenced by the thorough Rule 11 colloquy conducted by the Court prior to accepting his plea;

(c) Petitioner's sentencing hearing IAC claims should be dismissed as they are unsupported by the record and petitioner has failed to prove he was prejudiced by counsel's actions.

(d) Petitioner is not entitled to an evidentiary hearing.

### Petitioner's Reply (Dkt.# 235)

In his reply, Petitioner reiterates his claims previously made in his § 2255 motion, and refutes

the Government's position on the same:

(a) Petitioner's IAC claims are not defeated by the entry of his guilty plea;

(b) Petitioner's guilty plea was not made knowingly or voluntarily and the facts support this;

(c) The record supports Petitioner's claims of IAC at sentencing; and

(d) Petitioner is entitled to an evidentiary hearing

## III.  Analysis

**A.  Petitioner's Burden of Proof**

"A petitioner collaterally attacking his sentence or conviction bears the burden of proving that his sentence or conviction was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack.  28 U.S.C. § 2255.  A motion collaterally attacking a petitioner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence."  Sutton v. United States of America, 2006 WL 36859 *2 (E.D.Va Jan. 4, 2006).

**B.  Waiver**

"[T]he guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system.  Properly administered, they can benefit all concerned."  Blackledge v. Allison, 431 U.S. 63, 71 (1977).  However, the advantages of plea bargains "can be secure . . . only if dispositions by guilty plea are accorded a great measure of finality."  Id.  "To this end, the Government often secures waivers of appellate rights from criminal defendants as part of their plea agreement."  United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005).

In United States v. Attar, 38 F.3d 727, 731 (4th Cir. 1994), the Fourth Circuit found that "a waiver-of-appeal-rights provision in a valid plea agreement is enforceable against the defendant so long as it is the result of a knowing and intelligent decision to forgo the right to appeal."  The Fourth Circuit then found that whether a waiver is knowing and intelligent "depends upon the particular facts and circumstances surrounding [its making], including the background, experience, and

conduct of the accused." Id.  After upholding the general validity of a waiver-of-appeal-rights provision, the Fourth Circuit noted that even with a waiver-of-appeals-rights provision, a defendant may obtain appellate review of certain limited grounds.  Id. at 732.  For example, the Court noted that a defendant "could not be said to have waived her right to appellate review of a sentence imposed in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor such as race."  Id.  Nor did the Court believe that a defendant "can fairly be said to have waived his right to appeal his sentence on the ground that the proceedings following the entry of the guilty plea were conducted in violation of the Sixth Amendment right to counsel." Id.

Subsequently, in Lemaster, the Fourth Circuit saw no reason to distinguish between waivers of direct appeal rights and waivers of collateral attack rights.  Lemaster, 403 F.3d at 220.  Therefore, like the waiver-of-appeal-rights provision, the Court found that the waiver of the right to collaterally attack a sentence is valid as long as it is knowing and voluntary.  Id.  And, although the Court expressly declined to address whether the same exceptions apply since Lemaster failed to make such an argument, the court stressed that it "saw no reason to distinguish between waivers of direct-appeal rights and waivers of collateral-attack rights."  Id. at n. 2.

Based on these cases, it appears that ineffective assistance of counsel claims are barred by a valid waiver, to the extent that the facts giving rise to the claims occurred prior to the defendant entering his guilty plea.  Only claims arising after the entry of the guilty plea may fall outside the scope of the waiver.  Attar, 38 F.3d at 732 [holding it cannot be fairly said that a defendant "waived his right to appeal his sentence on the ground that the proceedings following entry of the guilty plea were conducted in violation of the Sixth Amendment right to counsel, for a defendant's agreement

to waive appellate review of his sentence is implicitly conditioned on the assumption that the proceedings following entry of the plea will be conducted in accordance with constitutional limitations"].

Therefore, when reviewing an ineffective assistance of counsel claim in a case where there is a waiver of collateral-attack rights in a plea agreement, we must first determine whether there is valid waiver. In doing so,

> The validity of an appeal waiver depends on whether the defendant knowingly and intelligently agreed to waive the right to appeal. Although this determination is often made based on adequacy of the plea colloquy -- specifically, whether the district court questioned the defendant about the appeal waiver – the issue ultimately is evaluated by reference to the totality of the circumstances. Thus, the determination must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.

United States v. Blick, 408 F.3d 162, 169 (4th Cir. 2005) (internal citations and quotations omitted).

In other words, the Court must examine the actual waiver provision, the plea agreement as a whole, the plea colloquy, and the defendant's ability to understand the proceedings. Id. If the Court finds that the waiver is valid, any IAC claims arising prior to the plea agreement are barred by the waiver.

As to any IAC claims made regarding an attorney's action, or lack thereof, after the plea agreement, the Fourth Circuit has stated the right to challenge a sentence on the ground that "the proceedings following entry of the guilty plea – including both the sentencing hearing itself and the presentation of the motion to withdraw their pleas – were conducted in violation of their Sixth Amendment right to counsel" are not waived by a general waiver of appeal rights contained in the plea agreement. Attar, 38 F.3d at 732-33. Therefore, upon first blush it appears that IAC claims

arising after the guilty plea and/or during sentencing are not barred by a general waiver-of appeal rights.

Several courts have distinguished IAC claims raised in a § 2255 case from those raised on direct appeal. In <u>Braxton v. United States</u>, 358 F. Supp. 2d 497 (W.D.Va. 2005), the Court noted that although the Fourth Circuit has yet to define the scope of waiver of collateral rights, several courts have held that § 2255 waivers should be subject to the same conditions and exceptions applicable to waivers of the right to file a direct appeal. <u>Braxton</u> at 502 (citing <u>United States v. Cannady</u>, 283 F.3d 641,645 n. 3 (4th Cir. 2000) (collecting cases); <u>Butler v. United States</u>, 173 F. Supp. 2d 489, 493 (E.D.Va. 2001)). Nonetheless, the Court distinguished the types of IAC claims available on direct appeal from those available in a § 2255 motion. Specifically, the Court noted:

> Appellate courts rarely hear ineffective assistance of counsel claims on direct review. Indeed, '[i]t is well settled that a claim of ineffective assistance should be raised in a 28 U.S.C. § 2255 motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance.' <u>United States v. King</u>, 119 F.3d 290, 295 (4th Cir. 1997). Therefore, the waiver exception recognized in <u>Attar</u> applies only to a very narrow category of cases. In contrast, a rule that defendants are unable to waive their right to bring an ineffective assistance claim in a § 2255 would create a large exception to the scope of § 2255 waivers. In fact, such an exception would render all such waivers virtually meaningless because most habeas challenges can be pressed into the mold of a Sixth Amendment claim on collateral review. The Fifth Circuit has recognized this dynamic by noting that '[i]f all ineffective assistance of counsel claims were immune from waiver, any complaint about process could be brought in a collateral attack by merely challenging the attorney's failure to achieve the desired result. A knowing and intelligent waiver should not be so easily evaded.' <u>United States v. White</u>, 307 F.3d 336, 344 (5th Cir. 2002).

<u>Braxton</u>, 358 F. Supp. 2d at 503.

The Court in <u>Braxton</u> further noted that the Tenth Circuit has also distinguished collateral-

attack waivers from the situation in <u>Attar</u> and that the Fourth Circuit's holding in <u>United States v. Broughton-Jones</u>, 71 F.3d 1143,1147 (4th Cir. 1995) also supports such a distinction. <u>Braxton</u>, 358 F. Supp. 2d at 503, n. 2. Finally, the <u>Braxton</u> Court found it persuasive that the majority of circuits to have confronted this question "have held that collateral attacks claiming ineffective assistance of counsel that do not call into question the validity of the plea or the § 2255 waiver itself, or do not relate directly to the plea agreement or the waiver, are waivable." <u>Id.</u> at 503. (collecting cases).

The recent unpublished decision <u>United States v. Morris</u>, No. 07-4223, slip op. (4th Cir. Sept. 13, 2007) indicates that when the district court conducts a thorough Rule 11 colloquy and the defendant specifically mentions he waives the right to appeal any sentence below the statutory maximum, the record established that defendant made a knowing and voluntary waiver of rights.

In this case, Petitioner expressly waived his right "to challenge the conviction or the sentence or the manner in which it was determined in any collateral attack, including but not limited to a motion brought under Title 28, United States Code, Section 2255." (Plea Agr. P.3; Dkt. No. 177). However, in the plea colloquy, the Court advised Petitioner that he did not waive rights to postconviction relief for "ineffective assistance of counsel, sentence above a statutory maximum, and sentence for an impermissible purpose." (Plea Trans. P.15; Dkt. No. 179). Therefore, the Court must review Petitioner's claims of ineffective assistance of counsel.

**C.      Claim 1:  Whether counsel failed to investigate and/or Prepare for Trial.**

Petitioner claims his counsel was ineffective for failing to investigate and prepare for trial. Specifically, Petitioner claims his counsel (1) failed to investigate and interview prospective defense witnesses who could have corroborated Petitioner's version of the events and failed to interview witnesses for the prosecution, (2) failed to investigate, develop or use available information that

could have undermined the prosecution's case, and (3) failed to investigate and develop a defense theory.

Counsel's conduct is measured under the two-part analysis outlined in <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984).  First, the petitioner must show that his counsel's performance fell below an objective standard of reasonableness.  <u>Id</u>. at 688.  In reviewing claims of ineffective assistance of counsel, "judicial scrutiny of counsel's performance must be highly deferential," and the court "must judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  <u>Id</u>. At 689-90.  Second, the petitioner must demonstrate he was prejudiced by counsel's performance.  In order to demonstrate prejudice, "the defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  <u>Id</u>. at 694.  If the defendant shows no prejudice from the alleged ineffectiveness of counsel, courts need not address counsel's performance.  <u>Fields v. Att'y Gen. of Maryland</u>, 956 F.2d 1290, 1297 (4th Cir.), <u>cert. denied</u>, 506 U.S. 885 (1992).

Additionally, a defendant alleging "ineffective assistance of counsel following the entry of a guilty plea has an even higher burden to meet."  <u>Hill v. Lockhart</u>, 474 U.S. 52, 53-59 (1985).  This burden was recognized by the Fourth Circuit, which held that "when a defendant challenges a conviction entered after a guilty plea, [the] 'prejudice' prong of the [<u>Strickland</u>] test is slightly modified.  Such a defendant 'must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'"  <u>Hooper v. Garraghty</u>, 845 F.2d 471, 475 (4th Cir. 1988).

Each of Petitioner's claims of ineffective assistance of counsel for failure to investigate and prepare for trial are discussed in turn.

## 1. <u>Failure to Interview Prospective Witnesses</u>

Petitioner asserts that his counsel failed to investigate and interview prospective defense witnesses who could have corroborated Petitioner's version of the events and failed to interview witnesses for the prosecution. Specifically, Petitioner alleges that although Petitioner's counsel was provided the names of five witnesses who had information that would have undermined the credibility of the Government's key witness, John Deutsch, counsel failed to secure the testimony of those witnesses.

The Court finds Petitioner's allegations do not warrant relief because Petitioner has failed to show his counsel's conduct was deficient or prejudicial. Although Petitioner claims that counsel failed to secure the testimony of five witness who could undermine the testimony of Mr. Deutsch, Petitioner fails to demonstrate that but for these errors, the result of the proceeding would have been different. <u>See</u> <u>Fields</u>, 956 F.2d at 1297. With regard to the first two identified witnesses, Theresa Deutsch and Kelly McDowell, Petitioner alleges that a voicemail message left by Mr. Deutsch on Theresa Deutsch's phone stating "you're next" shows that "Deutsch was essentially admitting to kill [sic] Kelly Elliott, or at least show his motive and his violent tendencies, mental state, and general violent behavior." (Pet. Br. P. 5; Dkt. No. 218). Petitioner next alleges that both Richie Hoko and Danielle Heckman phoned John Deutsch Sr. informing him that Deutsch "admitted and bragged" to both of them that he committed the murder.

Neither the voicemail or the alleged admissions demonstrate that the result in the case would have been different. Deutsch previously admitted to his involvement in the murder; Petitioner fails

to demonstrate how Deutsch's alleged statements heard by the five witnesses negate any guilty conduct by Petitioner.  Accordingly, this claim must fail.

### 2. Failure to Investigate, Develop or Use Available Information

Petitioner next alleges that his counsel failed to investigate, develop, or use available information that could have undermined the prosecution's case.  Specifically, Petitioner argues that his counsel was offered access to both Graebel Van Lines' phone records and Petitioner's home computer emails.  According to Petitioner, the phone records and emails would have discredited the testimony of Government witness, Tammy Jo Brenzo, because they show an ongoing relationship between Petitioner and Brenzo and negate "her testimony of a breakup, an alleged threat, and her claim of having no contact with petitioner in the last year."  (Pet. Br. P. 7; Dkt. No. 218).

Claims of ineffective assistance of counsel for failure to investigate are analyzed in light of all circumstances, and while "[c]ounsel could well have made a more thorough investigation than he did. [] [n]evertheless, in considering claims of ineffective assistance of counsel, '[w]e address not what is prudent or appropriate, but only what is constitutionally compelled.'" Burger v. Kemp, 483 U.S. 776, 794 (1987) (quoting United States v. Cronic, 446 U.S. 648, 665 n.38 (1984)).

Petitioner may be correct that the records and email might have discredited Brenzo's testimony regarding her relationship with Petitioner.  However, even assuming, *arguendo*, that the records and email did discredit Brenzo's testimony, Petitioner fails to demonstrate deficiency or prejudice.  Essentially, Petitioner argues that counsel failed to impeach Brenzo's testimony.  However, during the sentencing hearing, Petitioner's counsel cross-examined Mrs. Brenzo and solicited an admission that her report of the alleged threat made by Petitioner to her was nearly five years after the alleged threat happened.  Counsel's performance was not deficient.  Rather, counsel's

able cross-examination protected Petitioner's interest by eliciting damaging testimony from a Government witness. Moreover, Brenzo's testimony, while damaging to Petitioner's reputation, likely failed to play an important role in the outcome. Petitioner fails to demonstrate how counsel's alleged unreasonable behavior affected the outcome of the case. Accordingly, this claim, too, must fail.

**3. Failure to Investigate and Develop a Defense Theory**

Petitioner alleges that his counsel failed to investigate and develop a defense theory. Petitioner asserts that he was not involved in the murder until after it occurred. Specifically, Petitioner asserts that he attempted to protect Deutsch by lying to the victim's family and the police and that no evidence exists to link him to the murder except for his relationship with the victim and phone calls between the two. (Pet. Br. P. 8; Dkt. No. 218). By failing to investigate, Petitioner alleges that his counsel failed to develop a reasonable defense around the facts.

Again the Court must reject Petitioner's claim. First, Petitioner only asserts that ninety-five percent (95%) of the evidence points to Deutsch and fails to identify what evidence his counsel would have discovered to develop a defense had counsel properly investigated. See Bassette v. Thompson, 915 F.2d 932, 940-41 (4th Cir. 1990) (stating that a petitioner must explain what additional evidence would have been obtained from the additional investigation). Second, Petitioner failed to identify what his defense would have been and how counsel acted prejudicially in not developing the defense. See Strickland, 466 U.S. at 687. Therefore, Petitioner's claim must fail.

**D. Claim 2: Whether Counsel Gave Erroneous Advice to Induce Petitioner to Accept the Plea Agreement**

Petitioner claims his counsel was ineffective because counsel gave erroneous advice to induce Petitioner to accept the plea agreement. Specifically, Petitioner claims (1) counsel exerted

improper pressure to coerce Petitioner to plead guilty and threatened Petitioner with additional charges if he did not plead guilty, (2) counsel threatened Petitioner with the specter of the death penalty if he did not accept the plea agreement, (3) counsel coerced Petitioner's plea in a "late night, last minute offer," (4) counsel provided improper advice as to the sentence to be imposed, and (5) counsel was unprepared for trial.

Each of Petitioner's claims of ineffective assistance of counsel for rendering erroneous advice to induce Petitioner to accept the plea agreement are discussed in turn.

**1.  Whether Counsel Exerted Improper Pressure and Threatened Petitioner with Additional Charges to Coerce Petitioner to Plead Guilty**

Petitioner claims that his counsel repeatedly threatened that if Petitioner did not plead guilty but went to trial and won, "not only would the federal prosecuter [sic], but the state of pennsylvania [sic], and the state of west virginia [sic] would immediately charge me with multiple drug charges, as well as murder, murder for hire, and make sure I got more time than currently being offered." (Pet. Br. P. 9; Dkt. No. 218).  The Government contends the transcripts show that Petitioner entered his plea voluntarily and intelligently, and therefore, Petitioner was not coerced into pleading guilty.

"Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences."  Brady v. U.S., 397 U.S. 742, 748 (1970).  "A voluntary and intelligent plea of guilty by an accused person who has been advised by competent counsel, may not be collaterally attacked."  Mabry v. Johnson, 467 U.S. 504, 508 (1984).  "Absent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy."  Fields, 956 F.2d at 1299; see also Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity").

15

"[A] lawyer must take care not to coerce a client into either accepting or rejecting a plea offer." Jones v. Murray, 947 F.2d 1106, 1111 (4th Cir. 1991) ["[V]arious [ABA] Standards place[] upon counsel an affirmative duty to avoid exerting 'undue influence on the accused's decision' and to 'ensure that the decision . . . is ultimately made by the defendant.'" (quoting Standards for Criminal Justice 4-5.1(b) & 14-3.2(b))]." See also Purdy v. United States, 208 F.3d 41, 45 (2d Cir.2000).

The Court finds Petitioner knowingly and voluntarily entered into his plea agreement because Petitioner was made fully aware of the consequences of his plea, and Petitioner sets forth no evidence to suggest his plea was induced by threats. After a detailed description of the plea agreement during Petitioner's plea hearing, the Court specifically addressed Petitioner. (Plea Trans. P. 7-10; Dkt. No. 179). Petitioner affirmatively responded to receiving and reviewing the plea agreement with counsel, understanding the terms and provisions of the agreement, having the proper opportunity to ask questions about the plea agreement, and receiving satisfactory answers to any questions regarding the plea agreement. (Plea Trans. P. 14; Dkt. No. 179). Further, Petitioner represented that he understood the consequences of pleading guilty, including forfeiting his constitutional right to trial by jury. (Id. at 20). After formally pleading guilty, the Court asked Petitioner whether the guilty plea was "the result of any threat or coercion or harassment of you by anybody at any time." (Id. at 46). Petitioner denied that it was. (Id.). The Court then asked whether the plea was "the result of any promise or inducement other than those contained in the plea agreement." Again, Petitioner responded "no." (Id.). Finally, the Court found Petitioner "competent to enter a plea of guilty. . . . [T]he plea has been freely and voluntarily made, that the defendant is aware of the consequences of the plea, that a basis in fact for the tendered plea has been

established and that the elements of the crime have also been established." (Id. at 48). The Court then accepted the guilty plea.

Petitioner offers no evidence to negate the finding by the Court that his plea was entered voluntarily and intelligently. Petitioner has not met his burden; thus, the claim is without merit.

### 2. **Whether Counsel Threatened Petitioner with the Specter of the Death Penalty if Petitioner did not Accept the Plea Agreement.**

Petitioner claims that his counsel "constantly stressed" if Petitioner were found guilty at trial, he would receive the death penalty. Petitioner further alleges that counsel used emotional coercion to induce him to plead guilty. Again, the Government contends the transcripts show that Petitioner entered his plea voluntarily and intelligently, and therefore, Petitioner was not coerced into pleading guilty.

The Court will forego another full analysis of a valid guilty plea. Guilty pleas are valid if made voluntarily and intelligently, and Petitioner has failed to set forth sufficient facts to demonstrate, clearly and convincingly, that his plea was coerced with the threat of the death penalty. Additionally, Petitioner recognizes in his brief that the Supreme Court found a guilty plea to be voluntarily and intelligent where the defendant was represented by competent counsel and even though the plea was entered to avoid the possibility of the death penalty. North Carolina v. Alford, 400 U.S. 25, 31-32 (1970). Therefore, even if counsel made Petitioner aware of the possibility of the death penalty, and even suggested entering the plea to avoid the possibility of the death penalty, counsels' conduct was well within the realm of acceptable behavior.

Accordingly, Petitioner's claim is without merit.

### 3. **Whether Counsel Coerced Petitioner's Plea in a "Late Night, Last Minute Offer."**

Petitioner alleges his counsel was ineffective because counsel failed to inform him of the plea offer in a timely manner. Petitioner alleges that his counsel visited the jail on a Friday night and informed Petitioner that because trial was scheduled to start on Tuesday, Petitioner had to accept the plea immediately or there would be no deal.

Within the Fourth Circuit, a defendant's counsel has the following duty surrounding plea negotiations: "1) notify the client of a plea offer; 2) advise the client of the option to proceed to trial; 3) present the client with the probable outcomes of both the guilt and sentencing phases of each alternative; and 4) permit the client to make the ultimate decision." Jones v. United States, 2008 U.S. Dist. LEXIS 24908, at *7, (D. Md. Mar. 28, 2008), relying on Jones v. Murray, 947 F.2d 1106, 1110-1111 (4th Cir. 1991).

The Court finds that Petitioner's claim is without merit and is unsupported by the record. Petitioner sets forth no evidence to suggest that counsel abrogated the duties in Jones; Petitioner only alleges that the offer was presented to him "by late nite [sic] last minute." (Pet. Br. P. 10; Dkt. No. 218). Petitioner does allege that he signed the plea offer "against his wishes at the time." (Id.). Regarding petitioner's claim of the late night/last minute offer of a plea agreement on Friday night, January 18, 2008, before trial was scheduled to start on Tuesday January 22nd, a review of the record reveals that on November 30, 2007, defense counsel filed a sealed Ex Parte Motion for Family Visitation on petitioner's behalf, requesting that petitioner be granted a contact visit of not less than one hour with his sister, stating that "this contact is essential in an effort to open up plea negotiations which is definitely in the best interest of the Defendant[.]" (Dkt. No. 128). That contact visit was granted by a sealed Ex Parte Order on December 3rd, 2007 (Dkt. No. 129), and the visit was held on December 5, 2007. Further, in his memorandum in support of his § 2255 motion, petitioner several

times alludes to having been presented with, and rejecting a prior plea agreement. (Dkt. No. 218-2, P. 10 - 11). Clearly, the plea offer and plea negotiation discussions petitioner alleges his plea was coerced with were begun well before the "late night/last minute." Furthermore, as fully explained above, Petitioner failed to meet his burden to overcome the presumption that his plea was entered into voluntarily and intelligently.

Therefore, Petitioner's claim must fail.

### 4. Whether Counsel Provided Improper Advice as to the Sentence to be Imposed.

Petitioner alleges that his counsel was ineffective for failing to give proper advice as to the sentence Petitioner would receive. Petitioner alleges that "counsel assured petitioner that the open ended Plea was only to satisfy the Attorney General; That [sic] since the prosecutor and the victoms [sic] family had already previously agreed to the old Plea of 27 years, combined with the fact of petitioner having no criminal record, with strong family and community ties, with these facts counsel instructed petitioner would receive the low end of the range, being 33 years." (Pet. Br. P. 10-11; Dkt. No. 218).

The Court finds Petitioner's argument unpersuasive. Several Circuits of the United States Court of Appeals have found that a "miscalculation or erroneous sentence estimation by defense counsel is not a constitutionally deficient performance rising to the level of ineffective assistance of counsel." Hughes v. United States, 2007 WL 841940 at *4 (W.D.N.C. 2007), citing United States v. Gordon, 4 F.3d 1567, 1570 (10th Cir. 1993); Bethel v. United States, 458 F.3d 711, 717 (7th Cir. 2006), cert. denied, 127 S.Ct. 1027 (2007); United States v. Foster, 68 F.3d 86, 87-88 (4th Cir. 1995). Furthermore, it has been noted that:

> [T]he sentencing consequences of guilty pleas (or, for that matter guilty verdicts) are
> extraordinarily difficult to predict. Although the sentencing guidelines significantly

restrict the sentencing discretion of the district courts, that discretion is still extensive, and predicting the exercise of that discretion is an uncertain art. Therefore, . . . a mistaken prediction is not enough in itself to show deficient performance, even when that mistake is great[.]

Hughes, 2007 WL 841940 at *5, quoting United States v. Barnes, 83 F.3d 934, 940 (7th Cir. 1996).

All Petitioner has demonstrated is that his counsel gave an inaccurate prediction regarding potential sentence length. Petitioner has not alleged or established any other evidence required to make a cognizable claim for ineffective assistance of counsel. Further, during the plea hearing, the Court informed Petitioner that the statutory maximum for Count 2 of the indictment is life imprisonment, and Petitioner represented that he understood the maximum. (Plea Trans. P. 17-18; Dkt. No. 179). Additionally, Petitioner responded affirmatively when asked whether he understood that the Court would not be able to determine the applicable sentence until a later date after all sides received and had had an opportunity to review the presentence report; the Court could take into account any relevant conduct when determining the sentence; and the Court could utilize the Guidelines to determine whether a sentence variance was necessary. (Id. at 18-19).

Petitioner's counsel was not ineffective in failing to accurately predict the sentence. Further, Petitioner was made aware at the plea hearing, before entering his guilty plea, of the sentencing possibilities and still entered his plea. Accordingly, Petitioner's claim is without merit.

**5. Whether Counsel was Unprepared for Trial.**

Petitioner alleges his counsel was ineffective because counsel failed to develop any defense theory, conducted interviews solely for the purpose of mitigating the sentence, urged Petitioner to plead guilty, and had no trial strategy were Petitioner to opt for trial. Further, Petitioner alleges that counsel had no intention of going to trial as evidenced by counsel's disinterest in jury selection and counsel's unwillingness to object to the Court's handling of the jury selection process.

To establish a claim for ineffective assistance of counsel, Petitioner must demonstrate that counsel's performance was deficient and he was prejudiced by counsel's performance. Strickland, 466 U.S., at 687. Petitioner alleges that counsel's performance was deficient because he was unprepared for trial, specifically that counsel had no defense theory or trial strategy and acted disinterested at jury selection. Assuming, *arguendo*, even if this were true, Petitioner has still failed to demonstrate that he was prejudiced. Moreover, even a cursory review of the record clearly demonstrates that these allegations by petitioner are so patently false that they are rendered ludicrous. Both of petitioner's very experienced defense counsel actively and vigorously prepared for trial for many months, presenting multiple motions and motions *in limine* on his behalf, under seal, to protect petitioner's interests.[12] They participated in numerous pretrial hearings, some *in camera*, to argue multiple complex trial and jury issues; entered untold objections for cause to a very extensive juror pool list,[13] whittling it down to a prospective list of 64 potential jurors; participated in the preparation of a detailed juror questionnaire to weed out individuals who might be biased against petitioner's case; proposed individualized *voire dire* for prospective jurors; and participated in 4 days of *voire dire*, beginning on January 14, 2008 and continuing until January 17, 2008, the day of the evening petitioner finally signed his plea agreement. Further, defense counsel filed multiple witness and exhibit lists, clearly demonstrating that they were actively preparing for and had every intention of trying his case and that they were very motivated to select jurors who would be most favorable to his defense. This Court previously found Petitioner voluntarily and intelligently entered into a plea agreement. Had Petitioner rejected the plea offer, which was within

---

[12] Defense counsel prevailed on quite a number of issues presented in their motion *in limine*, demonstrating the successful, qualified and effective assistance they provided to petitioner's defense.

[13] The original jury pool for this matter was 220 prospective jurors. (Dkt. No. 123).

his rights to do, counsel would have proceeded to trial. Petitioner fails to demonstrate that had he not accepted the plea offer, counsel would have been unable to proceed to trial. Further, Petitioner's allegations regarding counsel's in-court behavior during jury selection are belied by the record. Petitioner's claim lacks merit and fails to demonstrate prejudice. Accordingly, this claim should be denied.

**E.     Claim 3: Counsel was Ineffective at Sentencing Hearing**

Petitioner alleges that his counsel was ineffective at the sentencing hearing. Specifically, Petitioner alleges that 1) counsel made no effort to contradict the Government's version of the facts, 2) counsel did not attempt to discredit witnesses, 3) counsel failed to present mitigating evidence, and 4) counsel made an ineffective closing argument.

Each of Petitioner's claims of ineffective assistance of counsel at the sentencing hearing are discussed in turn.

**1.     Whether Counsel was Ineffective at Sentencing Hearing Because Counsel was too Willing to Accept the Government's Version of the Facts.**

Petitioner asserts that his counsel was ineffective because counsel made no effort at the sentencing hearing to contradict the Government's version of the facts. The Government contends that though Petitioner argues his counsel should have called witnesses at the hearing to testify to Petitioner's innocence such evidence would have been inappropriate at that stage in the proceeding because Petitioner had already pled guilty. Additionally, the Government contends that Petitioner's counsel did not act improperly by accepting the Government's version of the facts because Petitioner pled guilty based upon the Government's version and did not attempt to reject or revoke his plea based upon differing facts.

Habeas petitions must meet heightened pleading requirements. <u>McFarland v. Scott</u>, 512 U.S.

849, 856 (1994). The petitioner must come forward with some evidence that the claim might have merit. Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992), *cert. denied,* 507 U.S. 923 (1993), *abrogation on other grounds recognized,* Yeatts v. Angelone, 166 F.2d 255 (4th Cir. 1999). Further, a defendant who alleges ineffective assistance of counsel following a guilty plea has an even higher burden than that under the traditional Strickland test: "he must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59; Hooper, 845 F.2d at 475.

Here, Petitioner's claims are nothing more than conclusory allegations which provide no specifics to demonstrate that counsel's behavior was unreasonable or prejudiced Petitioner. Petitioner merely asserts that "counsel made no effort to contradict governments [sic] version of facts, leaving petitioner without a defense at sentencing." (Pet. Br. P. 13; Dkt. No 218). Petitioner failed to show that his attorneys made any error at all, let alone that counsel made an error so serious that counsel failed to function as his counsel under the Sixth Amendment. Further, Petitioner had already pled to the Government's version of the facts. Petitioner had the opportunity to set forth his version of the facts at the plea hearing. However, after hearing the Government's version of the facts at the plea hearing detailed by Special Agent Lisa Hack, Petitioner declined to make any additions or corrections to the facts when asked by the Court. (Plea Trans. P. 46; Dkt. No. 179). Petitioner then, "based upon the testimony [he had] just heard from Special Agent Lisa Hack," pled "Guilty" to and admitted to the charges in Count 2 of the Indictment. (Id. at 46-48). Furthermore, Petitioner, when questioned again by the Court, said that he was "in fact, guilty of the crimes" and that he "did do it." (Id. at 47-48). Therefore, Petitioner's bald assertion that he was left without a defense at the sentencing hearing is groundless. As the Government has already pointed out, at that

point in the proceedings, Petitioner was not entitled to a defense. If Petitioner wanted to challenge the Government's version of the facts, he had the opportunity, but failed to take it, at the plea hearing. Without specifically alleging how Petitioner was prejudiced, the Petitioner is unable to meet his hefty burden to prove an ineffective assistance of counsel claim.

**2. Whether Counsel was Ineffective at Sentencing Hearing Because Counsel Did Not Attempt to Discredit Witnesses.**

Petitioner next alleges that his counsel was ineffective because "counsel did not attempt to discredit wittnesses [sic] at sentencing although he had overwhelming evidence, testimony, and statements to do so." (Pet. Br. P. 13; Dkt. No. 218). The Government contends that because counsel cross-examined the Government's witnesses, counsel did attempt to discredit the witnesses.

Again, Petitioner's claim is without merit. Petitioner asserts counsel failed to discredit Government witnesses, namely Tammy Jo Brenzo and John Deutsch. However, at the sentencing hearing, Petitioner's counsel cross-examined both witnesses. (Sent. Trans. P. 22-23 & 52-66; Dkt. No. 213). Specifically, Petitioner's counsel attempted to impeach Ms. Brenzo by soliciting damaging testimony regarding the length of time that passed during which Ms. Brenzo failed to notify authorities of Petitioner's threats to her. Similarly, Petitioner's counsel solicited damaging testimony from Mr. Deutsch regarding the inconsistencies in his testimony regarding the amount of times he struck the victim. Again, Petitioner's claims are nothing more than conclusory allegations which provide no specifics to demonstrate that counsel's behavior was unreasonable or prejudiced Petitioner. Accordingly, Petitioner's claim must fail.

**3. Whether Counsel was Ineffective at Sentencing Hearing by Failing to Present Mitigating Evidence.**

Petitioner argues his counsel was ineffective because despite having very strong mitigating

evidence, counsel neglected to use it during the sentencing hearing.  Instead, Petitioner asserts, counsel insisted that the "Judge already had made his mind up before he entered the courtroom, so there was no need to present anything further."  (Pet. Br. P. 14; Dkt. No. 218).  The Government contends that prior to the sentencing hearing, Petitioner's counsel presented the Court with several pieces of evidence, including video testimony and letters from family describing Petitioner, to mitigate Petitioner's sentence; therefore, Petitioner's counsel actually presented extensive mitigating evidence.

Habeas petitions must meet heightened pleading requirements.  <u>McFarland</u>, 512 U.S. at 856. The petitioner must come forward with some evidence that the claim might have merit.  <u>Nickerson</u>, 971 F.2d at 1136.  Allegations amounting to nothing more than conclusions provide no basis for an ineffective assistance of counsel claim. Here, Petitioner's claims are nothing more than conclusory allegations which provide no specifics to form a basis for the Court to grant Petitioner's claim. Petitioner has not shown that his attorneys made any error at all, let alone that counsel made an error so serious that he failed to function as his counsel under the Sixth Amendment.  He has not shown that the behavior was unreasonable or that he was prejudiced in any way.  These claims also fail.

**4.     <u>Whether Counsel was Ineffective at Sentencing Hearing by Giving a Substandard Closing Argument, which was Irrelevant to the Situation and was Self-Serving.</u>**

Petitioner argues he received ineffective assistance of counsel because counsel's "closing argument, with irrelevant elaborations [sic] of petitioners [sic] drinking habits and counsels [sic] love of the theater, was more a self serving speech [sic] pertaining to counsel than an argument in favor of leniency for petitioner."  (Pet. Br. P. 14-15; Dkt. No. 218).  The Government contends that Petitioner's counsel was not ineffective because Petitioner argues that only counsel's closing

argument was ineffective and that Petitioner's dissatisfaction with counsel's closing argument does not render an ineffective assistance of counsel claim.

Petitioner relies on <u>Patrasso v. Nelson</u>, 121 F.3d 297 (7th Cir. 1997). The Seventh Circuit found counsel's performance during the sentencing phase "practically non-existent." <u>Id</u>. at 303. Unlike in the case at bar, the Seventh Circuit found that counsel "made no effort to contradict the prosecution's case or to seek out mitigating factors. He entirely failed to represent his client . . . ." <u>Id</u>. at 304. While counsel in <u>Patrasso</u> acknowledged that he had "nothing" to mitigate the sentence during the sentencing hearing, Petitioner's counsel engaged in a lengthy, eloquent speech attempting to play on the heartstrings of the judge. (Sent. Trans. P. 96-103; Dkt. No. 213). Petitioner argues that counsel's closing argument focused on his love of the theater; however, counsel was actually attempting to compare the current tragedy to the classic love tragedies. Further, counsel presented mitigating evidence including the type of family man Petitioner was, and that despite his alcoholism, Petitioner had never been involved in a bar fight or shown any propensity toward violence. (<u>Id</u>.). It is not the task of this Court to determine the type of trial tactics in which a defense counsel should engage. In reviewing claims of ineffective assistance of counsel, "judicial scrutiny of counsel's performance must be highly deferential." <u>Strickland</u>, 466 U.S. at 689. Though Petitioner may not have approved of counsel's closing statements, it does not mean this Court must find that Petitioner received ineffective assistance. Accordingly, Petitioner's claim must fail.

## F.     **Request for Discovery, to Stay Proceedings, and for Appointment of Counsel**

Pursuant to Rule 6 of the Rules Governing Section 2255 proceedings, Petitioner requests the Court for leave to invoke the processes of discovery, specifically to compel the government to produce all discovery relating to the case.

Pursuant to Rule 6(a) of the Rules Governing § 2255 Proceedings, a prisoner may engage in discovery only "if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants him leave to do so, but not otherwise." "Specifically, discovery is warranted, 'where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief.'" <u>United States v. Roane</u>, 378 F.3d 382, 403 (4th Cir. 2004) (<u>citing</u> <u>Bracy v. Gramley</u>, 520 U.S. 899, 908-09). "'[G]ood cause' for discovery exists when a petition for habeas corpus establishes a prima facie case for relief." <u>Id</u>. Petitioner has not shown good cause for discovery. Thus, Petitioner's request for discovery should be denied.

The authority for the Court to appoint counsel in a § 2255 action is discretionary and there is no Constitutional right to have appointed counsel in post conviction proceedings. <u>Pennsylvania v. Finley</u>, 481 U.S. 551 (1987). A court may appoint counsel to a financially eligible person if justice so requires in a § 2255 action. <u>See</u> 28 U.S.C. §2255; 18 U.S.C. §3006A. Appointment of counsel for a petitioner who qualifies for the appointment of counsel under 18 U.S.C. §3006A, is only required in a § 2255 action when necessary for utilization of discovery procedures and when an evidentiary hearing is required. <u>See</u> Rules 6(a) and 8(c) of the Rules Governing Section 2255 cases in the United States District Courts.

Upon review of the file, the undersigned has concluded that the issues in this matter are not complex, that this matter does not require discovery or an evidentiary hearing, and that Petitioner has not demonstrated circumstances which demonstrate the need for appointment of counsel. Accordingly, Petitioner's Motion for Habeus Corpus § 2255 Rule 6(b) Discovery (Dkt. No. 219), Motion to Stay Proceedings on Section 2255 Motion, to Allow Discovery (Dkt. No. 220), and

Motion to Appoint Counsel Under Section 2255 Rule 6(a) (Dkt. No. 220) are hereby DENIED.

### IV. Recommendation

Based upon a review of the record, the undersigned recommends that Petitioner's §2255 motion be denied and dismissed from the docket because Petitioner did not receive ineffective assistance of counsel and knowingly, intelligently, and voluntarily entered his guilty plea.

Within fourteen (14) days after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address on the docket sheet, and to counsel of record, as applicable.

DATED: January 8, 2010

/s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE