**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**EUGENE J. TALIK,**

        Petitioner,

v.                                                  **Civil Action No. 5:09cv47**
                                                     **Criminal Action No. 5:06cr51**
**UNITED STATES OF AMERICA,**                **(JUDGE STAMP)**

        Respondent.

**ORDER DENYING PETITIONER'S MOTION TO AMEND §2255**

**I. Introduction**

On May 6, 2009, *pro se* petitioner, Eugene Talik ("Petitioner"), filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody.[1] On the same day, Petitioner also filed a Motion for Habeas Corpus § 2255 Rule 6(b) Discovery[2] and a Motion to Stay Proceedings on § 2255 Motion, to Allow Discovery,[3] permitting him to amend his § 2255 motion with its memorandum of law once discovery was complete. Also on the same day, Petitioner filed a Motion to Appoint Counsel Under § 2255 Rule 6(a).[4] On May 12, 2009, the Government was ordered to respond.[5] On May 29, 2009, the Government filed a Motion Requesting More Time to Respond.[6] On June 4, 2009, the Government's motion for an extension of time in

---

[1] Dkt.# 218.

[2] Dkt.# 219.

[3] Dkt.# 220.

[4] Dkt.# 221.

[5] Dkt.# 222.

[6] Dkt.# 224.

1

which to respond was granted.[7] The Government filed its response on August 10, 2009.[8] The Petitioner filed Motion for Extension of Time to File Reply to Government Response on August 21, 2009,[9] which was granted by Order entered on August 24, 2009,[10] extending the time for reply until September 5, 2009. On September 8, 2009, Petitioner filed his reply, along with a Motion for Leave to File Petitioner's Reply to Government's Response,[11] explaining that he had originally mailed his reply on August 24, 2009, but it was returned to him on September 2, 2009. On January 8, 2010, this Court entered a Report and Recommendation that Petitioner's § 2255 Motion be Denied.[12] Petitioner filed a Motion to Extend Time to File Objections to the Report and Recommendation on January 22, 2010,[13] which was granted by Order on January 26, 2010.[14] On February 1, 2010, Petitioner filed Objections to the Report and Recommendations[15] and filed a Motion to Amend his § 2255.[16]

## II. Facts

### A. Conviction and Sentence

---

[7] Dkt.# 225.

[8] Dkt.# 226.

[9] Dkt.# 229.

[10] Dkt.# 231.

[11] Dkt.# 235.

[12] Dkt.# 237.

[13] Dkt.# 239.

[14] Dkt.# 241.

[15] Dkt.# 242.

[16] Dkt.# 243.

On January 18, 2008, Petitioner signed a plea agreement by which he agreed to plead guilty to Count 2, interstate domestic violence resulting in death, in violation of 18 U.S.C. §§ 2261(a)(1) and (b)(1). In the plea agreement, the parties stipulated that Counts One and Three of the indictment would be dismissed. Petitioner also waived his right to an appeal and to collaterally attack his sentence. Specifically, the Petitioner's plea agreement contained the following language regarding his waiver:

> 5. Waiver of Certain Appellate Rights
> A.     If the Court sentences the defendant pursuant to the agreement in Section 4, then the defendant waives the right: 1) to appeal the sentence imposed on any ground, including any appeal right conferred by 18 U.S.C. §3742; and, 2) to challenge the conviction or the sentence or the manner in which it was determined in any collateral attack, including but not limited to a motion brought under Title 28, United States Code, Section 2255.

(Plea Agr. P. 3; Dkt. No. 177).

On January 21, 2008, Petitioner entered his plea in open court. Petitioner was 39 years old, a college graduate with a degree in accounting. (Plea Trans. P. 5; Dkt. No. 179). The Court specifically asked Petitioner if he understood the waiver of his appellate and post-conviction relief rights and Petitioner said "yes." (Id. at 15). The Court asked Petitioner's counsel if he believed petitioner understood the waiver of appellate and post-conviction relief rights and Petitioner's counsel said he was satisfied that Petitioner was aware of those rights. (Id. at 15). The Court then reviewed all the rights Petitioner was giving up by pleading guilty. (Id. at 18 - 22). During the plea hearing, the Government presented the testimony of Lisa M. Hack, Special Agent with the Federal Bureau of Investigation, to establish a factual basis for the plea. (Id. at 23 - 30). The Petitioner did not contest the factual basis of the plea.

After the Government presented the factual basis of the plea, the Petitioner advised the Court

that he was guilty of Count 2 of the indictment. (Id. at 46). The Petitioner further stated under oath that no one had attempted to force him to plead guilty, and that he was pleading guilty of his own free will. (Id.). In addition, he testified that the plea was not the result of any promises other than those contained in the plea agreement. (Id.). The Petitioner testified that his attorney had adequately represented him, and that his attorney had left nothing undone. (Id. at 47). Finally, Petitioner said he was in fact guilty of the crime to which he was pleading guilty. (Id. at 47 - 48).

At the conclusion of the hearing, the Court determined that the plea was made freely and voluntarily, that the Petitioner understood the consequences of pleading guilty, and that the elements of the crime were established beyond a reasonable doubt. (Id. at 48). The Petitioner did not object to the Court's finding.

On May 6, 2008, Petitioner appeared before the Court for sentencing. After considering several factors, including the circumstances and brutal nature of the crime, the degree of premeditation involved, as well as the defendant's upbringing and personal history and the sentencing objectives of punishment, the Court sentenced the petitioner to a term of life in prison. (Sentencing Trans. P. 107-08; Dkt. No. 213).

**B. Direct Appeal**

Petitioner did not file a direct appeal.

**C. Federal Habeas Corpus**

**Petitioners' Contentions (Dkt.# 218)**

In his federal habeas petition and supporting memorandum of law, the Petitioner raises multiple ineffective assistance of counsel (IAC) issues for relief including:

(1) Counsel failed to investigate and/or prepare for trial, because

(a) Counsel failed to investigate and interview prospective defense witnesses who could have corroborated Petitioner's version of the events and failed to interview witnesses for the prosecution;

(b) Failed to investigate, develop or use available information that could have undermined the prosecution's case;

(c) Did not investigate and develop a defense theory.

(2) Counsel gave erroneous advice to induce Petitioner to accept plea agreement because:

(a) Counsel exerted improper pressure to coerce Petitioner to plead guilty;

(b) Counsel threatened Petitioner with additional charges if he did not plead guilty;

(c) Counsel threatened Petitioner with the specter of the death penalty if he did not accept the plea agreement;

(d) Counsel coerced Petitioner's plea in a "late night, last minute offer;"

(e) Counsel provided improper advice as to the sentence to be imposed;

(f) Counsel was unprepared for trial.

(3) Counsel was ineffective at sentencing because

(a) Counsel was too willing to accept the Government's version of the facts;

(b) Counsel failed to discredit the witnesses for the prosecution;

(c) Counsel failed to present mitigating evidence; and

(D) Counsel's closing argument was substandard, irrelevant to the situation and self-serving.

Petitioner alleges that he did not raise any of these issues in a direct appeal because his counsel was ineffective for telling him that he had to waive his right to appeal.

**Government's Response (Dkt.# 226)**

(a) Petitioner's IAC claims are defeated by his entry of a guilty plea.

(b) Petitioner's guilty plea was knowing and voluntary, as evidenced by the thorough

Rule 11 colloquy conducted by the Court prior to accepting his plea;

(c) Petitioner's sentencing hearing IAC claims should be dismissed as they are unsupported by the record and petitioner has failed to prove he was prejudiced by counsel's actions.

(d) Petitioner is not entitled to an evidentiary hearing.

**Petitioner's Reply (Dkt.# 235)**

In his reply, Petitioner reiterates his claims previously made in his § 2255 motion, and refutes the Government's position on the same:

(a) Petitioner's IAC claims are not defeated by the entry of his guilty plea;

(b) Petitioner's guilty plea was not made knowingly or voluntarily and the facts support this;

(c) The record supports Petitioner's claims of IAC at sentencing; and

(d) Petitioner is entitled to an evidentiary hearing

### III. Analysis

**A.     Petitioner's Contentions**

In his motion to amend, Petitioner asserts two new grounds in addition to those enumerated in the original § 2255 petition. First, Petitioner contends that his counsel was ineffective because counsel failed to object to the life sentence and because counsel advised Petitioner that he would not receive a life sentence but a sentence within the 324-405 months range. Second, Petitioner contends that the Government breached and deviated from the terms of the plea agreement by moving for an upward variance from the Guideline range of 324-405 months.

**B.     Discussion**

Federal Rule of Civil Procedure 15 governs amending pleadings. Parties may amend pleadings once as a matter of course if the amendment is filed 21 days after serving the original

pleading or within 21 days after service of a responsive pleading if one is required. Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The liberal approach also provides for relation back of claims once a limitations period has passed. Amendments relate back to the original pleading when "the law that provides the applicable statute of limitations allows relation back; or the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out - or attempted to be set out - in the original pleading . . . ." Fed. R. Civ. P. 15(c)(1)(A)-(B). The purpose for allowing relation back of amendments is to provide an opportunity for claims to be tried on their merits rather than being dismissed on procedural technicalities. Tischler v. Baltimore Bancorp, 801 F.Supp. 1493, 1497 (D.Md. 1992).

The decision to grant or deny the motion to amend is entrusted to the sound discretion of the district court, and the court's decision is reviewed only for abuse of that discretion. Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993). Though leave to amend should be granted whenever "justice so requires," "this 'is not a mechanical absolute and the circumstances and terms upon which such leave is to be freely given is committed to the informed, careful judgment and discretion of the Trial Judge as he superintends the development of a cause toward its ultimate disposition.'" Freeman v. Continental Gin Co., 381 F.2d 459, 468 (5th Cir. 1967) (quoting Lone Star Motor Import, Inc. v. Citroen Cars Corp., 288 F.2d 69, 75 (5th Cir. 1961)). "Where it appears that granting leave to amend is unlikely to be productive, however, it is not an abuse of discretion to deny leave to amend." Ruffolo, 987 F.2d at 131; see also, Jackson v. Conway, 550 F.Supp.2d 382, 384 (W.D.N.Y. 2008) (holding that the court has discretion to deny leave to amend a habeas

7

corpus petition where it would be futile and denying a habeas petitioner's leave to amend his petition to include a claim for ineffective assistance of counsel because the claim was unsupported and facially untenable pursuant to the relevant law).

In 1996, the Anti-Terrorism and Effective Death Penalty Act of 1996 ["AEDPA"] was enacted, establishing a one-year limitation period within which to file any federal habeas corpus motion. 28 U.S.C. § 2255.[17]

The limitation period shall run from the last of:

1. The date on which the judgment of conviction becomes final;

2. The date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

3. The date on which the right was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;[18] or

4. The date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

In most cases, a judgment of conviction becomes final when the time for filing a direct appeal expires. Akins v. United States, 204 F.3d 1086, 1089 n.1 (11th Cir. 2000). There are two recognized exceptions to this general rule, which apply when a federal prisoner seeks direct appellate review of his conviction or sentence. First, if, following the disposition of his direct appeal, a federal prisoner files a petition for writ of certiorari with the U.S. Supreme Court, the

---

[17] The AEDPA applies to those cases filed after April 24, 1996, the effective date of the AEDPA. Lindh v. Murphy, 521 U.S. 320 (1997); Breard v. Pruett, 134 F.3d 615 (4th Cir.), cert. denied, 523 U.S. 371 (1998).

[18] The one-year statute of limitation period under this subsection runs from the date on which the Supreme Court initially recognized the right asserted, not from the date on which the right asserted was made retroactive. Dodd v. United States, 545 U.S. 353 (2005).

8

conviction becomes final when the Supreme Court either denies certiorari or issues a decision on the merits. See Washington v. United States, 243 F.3d 1299, 1300 (11th Cir. 2001). Second, if the federal prisoner does not file a timely certiorari petition after disposition of his direct appeal, the conviction becomes final on the date on which the prisoner's time for filing such a petition expires, which is ninety (90) days after entry of the judgment on direct appeal. See Clay v. United States, 537 U.S. 522, 532 (2003). For federal prisoners, the time for filing a direct appeal expires ten days after the written judgment of conviction is entered on the criminal docket. See Fed. R. Ap. P. 4(b)(1)(A)(I), (6).

Here, Petitioner's conviction became final on May 17, 2008. Petitioner's judgment was entered on May 7, 2008,[19] and Petitioner did not file a direct appeal. Therefore, Petitioner's conviction became final ten days after the time to file a direct appeal expired - May 17, 2008. Petitioner filed his motion to vacate under § 2255 on May 6, 2009, which was eleven (11) days before the expiration of the limitations period. Petitioner filed this motion to amend raising additional two grounds on February 2, 2010, approximately eight and one half (8 ½) months after the expiration of the limitations period. Therefore, in order for Petitioner's motion to amend be granted, the Court must find that the claims raised in the motion to amend relate back to the original § 2255 motion.

The Court finds that both assertions raised in the motion to amend are new and do not relate back to the claims raised in the original § 2255. First, as to the ineffective assistance of counsel claims, Petitioner does raise multiple ineffective assistance of counsel claims in the original motion; however, none of them relate to counsel's ineffectiveness with regard to the sentencing range.

---

[19]Dkt.# 199.

Petitioner does allege that counsel gave erroneous advice to induce Petitioner to accept the plea agreement, but the specific claims allege that counsel exerted improper pressure and threatened Petitioner with the death penalty if he did not accept the plea.[20] Petitioner does seem to allege, albeit confusingly, counsel gave erroneous advice regarding the sentence to be imposed. In the original motion, Petitioner references a first plea, which the "prosecutor and the victoms [sic] family had already previously agreed to the old Plea of 27 years . . . ."[21] This part of Petitioner's amended claim of ineffective assistance of counsel relates to the general area of sentencing, and Petitioner's original claim had ineffective assistance of counsel allegations related to the general area of sentencing. The two are both related to the general area of sentencing and may appear to be related to each other; nonetheless, the Court is required to deny a motion to amend if the amendment would be futile. See Jackson, 550 F.Supp.2d at 384.

Here, the claims would be futile because Petitioner's allegations are meritless. Petitioner claims that his counsel was ineffective for failing to object to the imposed life sentence. Petitioner contends that the life sentence was contrary to the Sentencing Guidelines, which mandated a 405 month sentence at the high end, and therefore, the plea agreement was illegal. Petitioner next alleges that his counsel was ineffective for advising Petitioner that his exposure would be in the 324-405 month range, as specified in the Guidelines, and that a life sentence would not be imposed. Contrary to Petitioner's contentions, both the plea agreement[22] and the plea hearing transcript[23] make clear

---

[20] Dkt# 218.

[21] Dkt.# 218, P. 11. The Court is unable to find another plea agreement in the docket.

[22] Dkt.# 177.

[23] Dkt.# 179.

10

that Petitioner knew the parties agreed "that a sentencing range of imprisonment for a period of not less than 405 months (33 years and nine months) and up to Life is the appropriate disposition of this case . . . ."[24] Additionally, it was specifically set forth in the plea agreement and at the plea hearing that the Government would be seeking a Life sentence.[25] Petitioner even admits in his motion to amend that he knew the Government would be seeking a Life sentence.[26] Therefore, in addition to the failed relation back test, under the futility standard, the Court must deny the Petitioner's motion to amend. Second, as to the Government's noncompliance with the plea agreement, Petitioner does not raise any ground in the original motion to which the ground against the Government may relate. Therefore, the Court must also deny the Petitioner's motion to amend on this ground.

**C.   Decision**

Because the claims Petitioner raises in the motion to amend do not relate to the claims in the original § 2255, and the claims would be futile if the motion to amend were granted, the Court must **DENY** Petitioner's motion to amend.

Filing of objections does not stay this Order.

Within fourteen (14) days after being served with a copy of this Order, any party may file with the Clerk of Court written objections identifying those portions of the Order to which objection

---

[24]Dkt.# 177; Section 4(A); Dkt.# 179, Ps. 7 and 9.

[25]Dkt.# 177; Section 4(A); Dkt.# 179, Ps. 7 and 9.

[26]Dkt.# 243, P. 3. "Petitioner, when he signed the plea agreement, he thought that the GSR was (405 to life) under the advisory Guidelinees, and that the government was going to ask for the high end of "life".  see Plea Agreement Pg.2 section 4(b), which explicitly states that 'defendant understands that the United States will be recommending a life sentence'."

is made and the basis for such objections. A copy of any objections shall also be submitted to the United States District Judge. Failure to timely file objections to this Order will result in waiver of the right to appeal from a judgment of this Court based upon such Order. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985): United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to mail a copy of this Order to the *pro se* petitioner by certified mail, return receipt requested, to his last known address on the docket sheet, and to counsel of record, as applicable.

**IT IS SO ORDERED.**

DATED: April 19, 2010

/s/ *James E. Seibert*

JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE